809 F.2d 508
 55 USLW 2407
 Barbara Anne GORRIE, Karen Comnick, Linda Schneider, and
Robert Schneider, on behalf of themselves and
their minor children, and other persons
similarly situated, Appellees,
and
Jo Anne Heille, Rosa Williams, Jean Sonnenberg, and Linda
Garza, on behalf of themselves and their minor
children, and other persons similarly
situated, Appellees,
v.
Otis R. BOWEN,* Secretary of the United States
Department of Health and Human Services,
Appellant, and Leonard W. Levine,
Commissioner, Minnesota
Department of Human
Services.
 No. 85-5394.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 12, 1986.
Decided Jan. 16, 1987.
Rehearing and Rehearing En Banc Denied April 14, 1987.
 
 Carlene McIntyre, Washington, D.C., for appellant.
 Martha A. Eaves, St. Paul, Minn., for appellees.
 Laurie N. Davison, Minneapolis, Minn., for intervenor Jo Anne Heille.
 Before HEANEY and WOLLMAN, Circuit Judges, and BATTEY,** District Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 The Secretary of Health and Human Services (Secretary) appeals the district court's order enjoining the enforcement of the Secretary's regulation, 45 C.F.R. Sec. 206.10(a)(1)(vii)(B) (1985), requiring that applications for public assistance for dependent children under the Aid to Families with Dependent Children program (AFDC) include siblings living in the same household. We must decide whether the Secretary may require the inclusion of coresident siblings and their child support or Title II Social Security income in an AFDC application. Specifically, the issues in this appeal are, first, whether the regulation is consistent with the language and legislative history of the statute authorizing it; second, whether the regulation conflicts with the law governing Title II Social Security benefits or state authority concerning child support obligations; and, finally, whether the regulation unconstitutionally denies due process rights or effects a taking of private property.
 
 
 2
 * The AFDC program is a cooperative federal-state assistance program authorized by Title IV-A of the Social Security Act, 42 U.S.C. Secs. 601-615 (1982 & Supp. III 1985). The program is administered by state agencies, which submit plans to the federal government for the Secretary's approval. Id. Sec. 602(b). The federal government then reimburses the state for a portion of the funding of the program.
 
 
 3
 The AFDC program provides assistance to dependent children who meet certain age requirements, id. Sec. 606(a)(2), and who are "deprived of parental support or care." Id. Sec. 606(a)(1). Applicants also must be "needy" to qualify for AFDC assistance. Id. Sec. 606(a).[1] The required contents of a state AFDC plan, including the procedures for determining financial need and eligibility, are set out at 42 U.S.C. Sec. 602(a) (Supp. III 1985). Before 1984, the filing unit for AFDC applications was not required to include all coresident family members. Consequently, a family applying for AFDC assistance could exclude members with income from the filing unit to prevent the reduction in the family's AFDC payments that would be caused by including all family members and their income.
 
 
 4
 Section 2640(a) of the Deficit Reduction Act of 1984, Pub.L. No. 98-369, 98 Stat. 494, 1145 (codified at 42 U.S.C. Sec. 602(a)(38) (Supp. III 1985)),[2] amended the AFDC program by requiring that state AFDC plans, in determining the need of a dependent child, must include any parent of the child and any brother or sister of the child who "meets the conditions described in clauses (1) and (2) of section 606(a) of [title 42]," 42 U.S.C. Sec. 602(a)(38) (Supp. III 1985), as long as the parent or siblings are living in the same home as the dependent child. The section further requires that "any income of or available for," id., the parent or siblings must be included in the determination of need, "notwithstanding," id., the provisions of Title II of the Social Security Act concerning the obligations of representative payees of Title II beneficiaries. 42 U.S.C. Sec. 405(j) (Supp. III 1985).[3]
 
 
 5
 The Secretary's interim final regulation implementing the statute became effective October 1, 1984. The regulation states that:
 
 
 6
 (vii) For AFDC only, in order for the family to be eligible, an application with respect to a dependent child must also include, if living in the same household and otherwise eligible for assistance:
 
 
 7
 (A) Any natural or adoptive parent, or stepparent (in the case of States with laws of general applicability); and
 
 
 8
 (B) Any blood-related or adoptive brother or sister.
 
 
 9
 45 C.F.R. Sec. 206.10(a)(1)(vii) (1985) ("family unit filing regulation"). The Commissioner of the Minnesota Department of Human Services issued an Instructional Bulletin consistent with the Secretary's regulation.[4]
 
 II
 
 10
 Barbara Anne Gorrie and other named appellees are the custodial parents of children who do not share a common father. In each family, some of the children receive AFDC assistance and others receive child support payments. Robert Schneider, also a named appellee, is a non-custodial father paying child support for a child living with other children who receive AFDC. Gorrie brought this action on behalf of herself and the other named appellees, their minor children, and a class of all similarly situated individuals in Minnesota. She alleged that the Secretary's family unit filing regulation was invalid on statutory and constitutional grounds, and sought injunctive relief.[5] On April 1, 1985, the district court certified the class,[6] enjoined enforcement of the regulation, and ordered that AFDC applicants or recipients affected by 42 U.S.C. Sec. 602(a)(38) were entitled to a pre-deprivation hearing. Gorrie v. Heckler, 606 F.Supp. 368 (D.Minn.1985) (Gorrie I ).
 
 
 11
 Jo Anne Heille and other named appellees are the parents of families in which some of the children receive AFDC assistance and others receive Title II Social Security benefits.[7] Heille, on behalf of herself and the other named appellees, their minor children, and a class of all similarly situated individuals in Minnesota, sought to intervene in the action pursuant to Rule 24(a)(2). Fed.R.Civ.P. 24(a)(2). On July 22, 1985, the district court permitted Heille to intervene, certified the class,[8] enjoined enforcement of the regulation as to the class, and again ordered that AFDC applicants or recipients affected by 42 U.S.C. Sec. 602(a)(38) were entitled to a pre-deprivation hearing. Gorrie v. Heckler, 624 F.Supp. 85 (D.Minn.1985) (Gorrie II ).
 
 
 12
 By an order of September 10, 1985, the district court converted the preliminary injunctions as to both classes into a permanent injunction. Gorrie II, 624 F.Supp. at 92-94.
 
 III
 
 13
 The first issue we must decide is whether the Secretary's regulation conforms with the statute that it purports to implement. None of the parties disagree that the regulation requires the independently supported coresident siblings of a dependent child applying for AFDC to be included in the application.[9] The statute, however, does not explicitly require that independently supported siblings be included in the AFDC application. Therefore, we must review both the language of the statute and its legislative history for indications of Congress' intent on this issue.
 
 
 14
 * In determining how Congress intended this statute to be implemented, we look first to the language of the statute itself. See Heckler v. Turner, 470 U.S. 184, 193, 105 S.Ct. 1138, 1144, 84 L.Ed.2d 138 (1985). The district court found that because the statute incorporated 42 U.S.C. Sec. 606(a)(1) and (2), independently supported children had to be "needy" to be included in an application for AFDC benefits. Gorrie I, 606 F.Supp. at 372. Under this interpretation, Congress could not have intended independently supported children to be included in AFDC applications because they are not needy. We believe the plain language of the statute is contrary to the district court's conclusion. Congress referred only to siblings who meet the conditions of "clauses (1) and (2) of [42 U.S.C.] section 606(a)." 42 U.S.C. Sec. 602(a)(38) (Supp. III 1985). These clauses do not require a child to be needy; that requirement precedes the clauses. Consequently, Congress' reference to sections 606(a)(1) and (2) does not preclude a congressional intent that independently supported children may be included in AFDC applications. Furthermore, the provisions of section 606(a)(2), which require that a child be deprived of "parental support or care," do not conflict with a congressional intent to include independently supported children in AFDC applications. Although independently supported children are not deprived of parental support, they are deprived of the care of a parent; thus they meet the disjunctive requirement of section 606(a)(2).
 
 
 15
 The statutory language also reveals that Congress intended by adopting section 602(a)(38) to affect both child support payments and Title II Social Security benefits. The statute directly refers to a provision governing Title II benefits, 42 U.S.C. Sec. 405(j) (Supp. III 1985), in noting that section 602(a)(38) is to be applied notwithstanding the Title II provision. A reading of section 602(a)(38) in conjunction with 42 U.S.C. Sec. 602(a)(8)(A)(vi), also added by the Deficit Reduction Act of 1984 and requiring that state agencies disregard the first fifty dollars of an independently supported sibling's child support payments in determining need,[10] indicates that Congress intended to reach child support recipients.
 
 B
 
 16
 We are further guided in our search for indications of Congress' intent by the legislative history of section 602(a)(38).
 
 
 17
 In May 1983, the Secretary submitted proposed legislation to the Congress entitled the "Social Welfare Amendments of 1983." The Secretary stated that the proposed bill would establish "uniform rules on the family members who must file together for AFDC," and continued: "In general, the parents, sisters, and brothers living together with a dependent child must all be included; the option of excluding a sibling with income, for example, would no longer be available." Legislative Addendum to Appellant's Brief at 1b (Letter from Secretary Heckler to Vice President Bush (May 25, 1983)). The bill's provisions, according to the Secretary, would "more realistically reflect[ ] the actual home situation." Id. The Secretary's summary explanation of the bill stated that the proposal would add "a new requirement that the State include, as a member of the AFDC family * * * the minor siblings of the dependent child * * * if the siblings are, themselves, deprived of parental support or care and under the age limit selected by the State." Id. at 3b (Section-by-Section Summary of Social Welfare Amendments of 1983). The explanation does not state that a child, to be included, must be needy.
 
 
 18
 The Secretary's proposed legislation was not adopted at the time of its original submission in 1983. The Deficit Reduction Act of 1984, however, enacted substantially similar changes to the AFDC program. The provision that is now section 602(a)(38) was added to the Act by a Senate amendment subsequently accepted by a Conference Committee agreement. The legislative history of the Act includes the Senate Report, which states that under the law prior to section 602(a)(38) "a family might choose to exclude a child who is receiving social security or child support payments."[11] S.Rep. No. 169, 98th Cong., 2d Sess. 980 (Comm. Print 1984). The report also notes that section 602(a)(38) would "end the present practice whereby families exclude members with income in order to maximize family benefits, and will ensure that the income of family members who live together and share expenses is recognized and counted as available to the family as a whole." Id. The Conference Report reiterates that section 602(a)(38) was to require states to include in the filing unit "all minor siblings living with a dependent child who applies for or receives AFDC." H.R.Conf.Rep. 861, 98th Cong., 2d Sess. 1407, reprinted in 1984 U.S.Code Cong. & Admin.News 697, 1445, 2095. The report also shows that section 602(a)(38) was adopted by the Conference Committee with one modification, the fifty dollar child support disregard of section 602(a)(8)(A)(vi). The addition of the disregard supports the view that section 602(a)(38) was meant to reach child support recipients.
 
 C
 
 19
 The class members argue that the Secretary's construction of the statute, reflected in the regulation, conflicts with the "principle of availability" applicable to the AFDC program. The principle of availability governs the definition of income for purposes of section 602(a)(7). 42 U.S.C. Sec. 602(a)(7) Supp. III 1985). The principle prevents the states from "relying on imputed or unrealizable sources of income artificially to depreciate a recipient's need." Heckler v. Turner, 470 U.S. 184, 201, 105 S.Ct. 1138, 1148, 84 L.Ed.2d 138 (1985); see Lewis v. Martin, 397 U.S. 552, 559, 90 S.Ct. 1282, 1285, 25 L.Ed.2d 561 (1970). Section 602(a)(38) requires that any "income of or available for" any independently supported sibling shall be included in making the need determination under section 602(a)(7).
 
 
 20
 The district court found section 602(a)(38) to contain a requirement that funds available to the independently supported sibling must also be actually available for the family at large before they may be counted in the need determination. Gorrie I, 606 F.Supp. at 371. In turn, the court held that "[w]hether family members 'share expenses' is inherently a factual matter." Id. The district court thus found that Congress did not create a presumption of shared expenses. The district court's approach, however, confuses the issues in this case. If, as the Secretary argues Congress intended, independently supported coresident siblings must apply for AFDC, then their child support payments and Title II benefits may be counted as income. The siblings themselves become applicants, and their own income clearly is actually available to them. The class members' complaint, however, is that the sibling applies as part of a larger family group; thus his income is in some sense imputed to other persons. But the Secretary argues that Congress intended section 602(a)(38) to change the focus of the AFDC need determination away from resources available to individuals and toward the resources available to all of the individuals in an AFDC family. The principle of availability does not prevent Congress from attempting such ends. If the Secretary's understanding of the statute is correct, then this is not a case of a recipient's need being "artificially depreciated," as the availability principle forbids. Rather, it is a case of Congress exercising its power to redirect the focus of AFDC need determinations.[12] Cf. Davis v. Lukhard, 788 F.2d 973, 979-80 (4th Cir.), cert. denied sub nom. Staton v. Lukhard, --- U.S. ----, 107 S.Ct. 231, 93 L.Ed.2d 157 (1986). Thus, the central issue remains whether the Secretary's approach is consistent with the statutory language and legislative history of section 602(a)(38).[13]
 
 
 21
 The statute and its legislative history indicate that Congress intended that all coresident siblings of a dependent child applying for AFDC and their income, including Title II Social Security benefits and child support, should be counted in determining need and thus eligibility for AFDC assistance. An agency's construction of a statute under its enforcement jurisdiction is generally accorded deference if the construction "has a reasonable basis in law and is consistent with the congressional policy behind the statute." International Nutrition, Inc. v. United States Dep't of Health & Human Servs. 676 F.2d 338, 342 (8th Cir.1982); see Connecticut Dep't of Income Maintenance v. Heckler, 471 U.S. 524, 532, 105 S.Ct. 2210, 2215, 85 L.Ed.2d 577 (1985) (agency's construction need not be the only reasonable one); Volkswagenwerk Aktiengesellschaft v. Federal Maritime Comm'n, 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968); Bailey v. Federal Intermediate Credit Bank, 788 F.2d 498, 499-500 (8th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 317, 93 L.Ed.2d 290 (1986). Although it is persuasive that the Secretary had at least some hand in the genesis of this statute, see International Nutrition, 676 F.2d at 342 (citing Zuber v. Allen, 396 U.S. 168, 192, 90 S.Ct. 314, 327, 24 L.Ed.2d 345 (1969)), the mere fact that he takes a position on its interpretation does not make the interpretation unassailable. Phillips v. Noot, 728 F.2d 1175, 1178 (8th Cir.1984). The Secretary argues that Congress, by passing section 602(a)(38), intended to create a legislative presumption of availability of income as to the individual and as to the family in recognition of the fact that family members who live together most likely share expenses. Consistent with this understanding of the statute, the Secretary's regulation requires that siblings of the dependent child be included in the application for AFDC. Although the statute and legislative history do not say in so many words that siblings must be included in an application, our review of the language and the legislative history of the statute persuades us that the Secretary's regulation is a reasonable interpretation of the intent of Congress and is consistent with the statute.[14]IV
 
 
 22
 Appellees argue further that the Secretary's regulation conflicts with the federal statutes governing Title II Social Security benefits and with state authority concerning child support obligations.
 
 
 23
 * The Heille class argues that the family unit filing regulation, and thus the interpretation of section 602(a)(38) that it embodies, is inconsistent with two provisions governing the Title II program. If the class is correct, then a more conciliatory interpretation of section 602(a)(38) than the Secretary's would be appropriate, even though, as we have found, the statutory language and legislative history make the Secretary's interpretation a permissible one. Owens v. Heckler, 753 F.2d 675, 679 (8th Cir.1985) (citing Markham v. Cabell, 326 U.S. 404, 411, 66 S.Ct. 193, 196, 90 L.Ed. 165 (1945)). First, the class argues that the regulation violates the anti-alienation statute, 42 U.S.C. Sec. 407(a) (Supp. III 1985), which prohibits any transfer or assignment of Title II benefits and any seizure of benefits through legal process.[15] The district court agreed, finding that the Secretary's interpretation of section 602(a)(38) "would necessarily ignore the prohibitions of the anti-alienation statute." Gorrie II, 624 F.Supp. at 90.
 
 
 24
 The anti-alienation provision "imposes a broad bar against the use of any legal process" to reach Social Security benefits. Philpott v. Essex County Welfare Bd., 409 U.S. 413, 417, 93 S.Ct. 590, 592, 34 L.Ed.2d 608 (1973). The Secretary's regulation does not subject Title II benefits to legal process, however, nor does it result in an assignment or transfer of benefits. It requires only that Title II benefit recipients apply for AFDC and have their incomes included in the family filing unit. This does not constitute a use of legal process to garnish or attach benefits. See Moore v. Colautti, 483 F.Supp. 357, 368 (E.D.Pa.1979), aff'd, 633 F.2d 210 (3d Cir.1980). The Title II benefit checks are not actually received and then disbursed by the state agency; rather, they continue to go directly to the child's representative payee. See Tidwell v. Schweiker, 677 F.2d 560, 568 (7th Cir.1982), cert. denied sub nom. Pavkovic v. Tidwell, 461 U.S. 905, 103 S.Ct. 1874, 76 L.Ed.2d 806 (1983); Moore, 483 F.Supp. at 367. The regulation results in an inclusion of income, not an assignment or transfer of Title II benefits. To the extent that sharing of income among family members occurs after the benefits are paid to the representative payee, it is not prohibited by the anti-alienation provision. The use of Title II benefits by a representative payee is specifically governed by other provisions of Title II.
 
 
 25
 The Heille class' second argument is that the Secretary's regulation is inconsistent with the representative payee provisions of Title II. Representative payees[16] are obligated to spend benefits only for the "use and benefit" of the beneficiary. 42 U.S.C. Sec. 405(j)(1) (Supp. III 1985). Representative payees who violate their obligations are subject to criminal penalties. 42 U.S.C. Sec. 408(e) (1982 & Supp. III 1985). The class argues that counting Title II benefits as available to an entire family violates the representative payee provisions and that the Secretary's regulation will force representative payees to use Title II benefits for family members other than the beneficiary, thus causing them to violate their representative payee obligations. The language of the statute and a recent decision of this court compel us to reject these arguments.
 
 
 26
 Section 602(a)(38), by its own terms, is to be enforced "notwithstanding" the representative payee provisions of Title II. This express reference to section 405(j) clearly indicates that Congress anticipated the alleged incongruence between the implementation of section 602(a)(38) and section 405(j). Showers v. Cohen, 645 F.Supp. 217, 220 (M.D.Pa.1986); Ardister v. Mansour, 627 F.Supp. 641, 644-45 (W.D.Mich.1986); Huber v. Blinzinger, 626 F.Supp. 30, 33 (N.D.Ind.1985). Congress resolved the potential conflict by providing that the statutory obligations of representative payees should not be applied to interfere with the operation of section 602(a)(38). It readily follows that the criminal sanctions of section 408(e) are unenforceable in such circumstances. Huber, 626 F.Supp. at 33.
 
 
 27
 The decision in Cunningham v. Toan, 762 F.2d 63 (8th Cir.1985), supports our conclusion that the family unit filing regulation is consistent with representative payee obligations. The Cunningham court considered a challenge to the practice of counting a minor parent's Title II benefits paid to a representative payee as income available to the minor parent's dependent child for AFDC eligibility purposes. The court's original decision invalidating the practice was subsequently vacated by the Supreme Court for reconsideration in light of the Deficit Reduction Act. Cunningham v. Toan, 728 F.2d 1101 (8th Cir.1984), vacated, 469 U.S. 1154, 105 S.Ct. 896, 83 L.Ed.2d 912 (1985). On remand, the court interpreted the portion of the Secretary's regulation applicable to parents, 45 C.F.R. Sec. 206.10(a)(1)(vii)(A) (1985), to mean that: "If the [Title II] beneficiary, the dependent child and the representative payee live in the same household, then the state must consider the [Title II] benefits as income available when making AFDC eligiblity and grant determinations." Cunningham, 762 F.2d at 66. In reaching this conclusion the court made specific reference to the "notwithstanding" language of section 602(a)(38). Id. at 65. The court's opinion provides no basis for an argument that its reasoning is limited to settings where the Title II beneficiary is a minor parent. The Heille class argues that the obligation of a parent to support his or her child and the fact that Social Security benefits may be garnished for child support distinguish Cunningham from this case, but the Cunningham court does not appear to have relied on either rationale in interpreting the statute and regulation. We believe the court's interpretation of part A of the Secretary's regulation is equally applicable to part B of the regulation. See Oliver v. Ledbetter, 624 F.Supp. 325, 330-31 (N.D.Ga.1985). Consequently, the Secretary's regulation is based on an interpretation of section 602(a)(38) that is consistent with both the anti-alienation and representative payee provisions of Title II.
 
 B
 
 28
 The Commissioner of the Minnesota Department of Human Services (Commissioner)[17] argues that the family unit filing regulation conflicts with the state's traditional authority over matters concerning child support, and therefore violates the tenth amendment to the Constitution.[18] We have no doubt that child support and other family law matters have traditionally been the province of the states, see Hisquierdo v. Hisquierdo, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979); United States v. Yazell, 382 U.S. 341, 352-53, 86 S.Ct. 500, 506-07, 15 L.Ed.2d 404 (1966), but we believe the Commissioner's tenth amendment argument is inapposite in the context of this exercise of congressional power under the spending clause.
 
 
 29
 The spending clause gives Congress the "Power To lay and collect Taxes * * * to * * * provide for the * * * general Welfare of the United States." U.S. Const. art. I, Sec. 8, cl. 1. In the course of exercising its spending power Congress unquestionably may impose conditions on the receipt of federal funds by the states. E.g., Pennhurst State School & Hosp. v. Halderman, 451 U.S. 1, 17, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981); Fullilove v. Klutznick, 448 U.S. 448, 474, 100 S.Ct. 2758, 2772, 65 L.Ed.2d 902 (1980); Oklahoma v. United States Civil Serv. Comm'n, 330 U.S. 127, 143, 67 S.Ct. 544, 553, 91 L.Ed. 794 (1947); Steward Mach. Co. v. Davis, 301 U.S. 548, 585-91, 57 S.Ct. 883, 890-92, 81 L.Ed.2d 1279 (1937). Similarly, it is clear that through conditions on the receipt of funds Congress may regulate areas that it does not have the power to affect directly. E.g., Oklahoma v. United States Civil Serv. Comm'n, 330 U.S. at 143, 67 S.Ct. at 553; Kentucky v. Donovan, 704 F.2d 288, 298 (6th Cir.1983); Oklahoma v. Schweiker, 655 F.2d 401, 405 (D.C.Cir.1981); New Hampshire Dep't of Employment Sec. v. Marshall, 616 F.2d 240, 245-46 (1st Cir.), appeal dismissed, 449 U.S. 806, 101 S.Ct. 53, 66 L.Ed.2d 10 (1980); Florida v. Mathews, 526 F.2d 319, 325-26 (5th Cir.1976).
 
 
 30
 States that wish to receive federal funds for AFDC programs must comply with the congressional requirements for a state AFDC plan. 42 U.S.C. Secs. 601, 602(a) (1982 & Supp. III 1985). Among those requirements is section 602(a)(38). Consequently, section 602(a)(38) is not an attempt by Congress to directly displace the state law of child support obligations; rather, it is a condition on the receipt of federal funds. States that object to the condition can avoid it by choosing to forego federal funding. E.g., South Dakota v. Dole, 791 F.2d 628, 634 (8th Cir.), cert. granted, --- U.S. ----, 107 S.Ct. 567, 93 L.Ed.2d 572 (1986); Crawford v. Pittman, 708 F.2d 1028, 1037 (5th Cir.1983); Donovan, 704 F.2d at 299; Oklahoma v. Schweiker, 655 F.2d at 412; Marshall, 616 F.2d at 247; Walker Field Pub. Airport Auth. v. Adams, 606 F.2d 290, 297 (10th Cir.1979). States that wish to continue funding their AFDC programs with federal dollars must, however, be willing to accept Congress' conditions on the receipt of those funds.
 
 
 31
 The Commissioner argues, however, that this condition on the receipt of federal funds so infringes an area traditionally reserved to the state that it violates the tenth amendment. We cannot agree. The Supreme Court's most recent decision on the tenth amendment and the principle of federalism, Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), counsels that state sovereignty is to be found in "the shape of the constitutional scheme" and "the structure of the Federal Government itself," instead of in "predetermined notions of sovereign power." Id. at 550, 105 S.Ct. at 1017. The Commissioner concedes that Garcia "raise[s] doubt about the extent to which the tenth amendment provides a substantive limitation on the exercise of federal power." State Appellee's Brief at 24. Even prior to Garcia, however, under the old regime of National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), overruled by Garcia, the courts were unwilling to extend the then-prevailing view of federalism to tenth amendment challenges of congressional action under the spending power. Crawford, 708 F.2d at 1037-38; Donovan, 704 F.2d at 298-99; Oklahoma v. Schweiker, 655 F.2d at 411-12; Marshall, 616 F.2d at 247. The National League of Cities Court, invalidating Congress' exercise of the commerce power to extend federal wage and hour requirements to state government employees, specifically declined to express any view "as to whether different results might obtain if Congress seeks to affect integral operations of state governments by exercising authority granted it under * * * the spending power." National League of Cities, 426 U.S. at 852 n. 17, 96 S.Ct. at 2474 n. 17. Moreover, the Court found that the provisions invalidated there "directly displace[d] the States' freedom to structure integral operations in areas of traditional government functions." Id. at 852, 96 S.Ct. at 2474. As we have stated, Congress, by passing section 602(a)(38), did not create a new federal law of child support obligations, it simply placed conditions on the receipt of federal funds. Thus, even under the now defunct National League of Cities approach with its deference to state sovereignty, the Secretary's regulation presents no tenth amendment violation.[19]
 
 
 32
 We note further that, consistent with our views on the tenth amendment issue, this case does not present the "classic" preemption question of whether a congressional enactment precludes state regulation of the same subject. See New York State Dep't of Social Servs. v. Dublino, 413 U.S. 405, 411 n. 9, 430 n. 9, 93 S.Ct. 2507, 2512 n. 9, 2521 n. 9, 37 L.Ed.2d 688 (1973) (opinion of the Court and Marshall, J., dissenting). Instead, "[t]he question here relates to the conditions that Congress has placed on state programs supported by federal funds." Dublino, 413 U.S. at 430 n. 9, 93 S.Ct. at 2521 n. 9 (Marshall, J., dissenting). The state voluntarily accepts the conditions imposed by Congress and, once it chooses to do so, the supremacy clause[20] obliges it to comply with federal AFDC requirements. McCoog v. Hegstrom, 690 F.2d 1280, 1284 (9th Cir.1982) (citing Townsend v. Swank, 404 U.S. 282, 285-86, 92 S.Ct. 502, 504-05, 30 L.Ed.2d 448 (1971); King v. Smith, 392 U.S. 309, 316-17, 88 S.Ct. 2128, 2132-33, 20 L.Ed.2d 1118 (1968)); Planned Parenthood Ass'n v. Dandoy, 635 F.Supp. 184, 188-89 (D.Utah 1986). The supremacy clause only operates, however, to the extent that there is a conflict between state law and a federal law or regulation. Kargman v. Sullivan, 552 F.2d 2, 12 (1st Cir.1977); Dandoy, 635 F.Supp. at 189.
 
 
 33
 In determining whether there is a conflict between the state and federal law in this case, we begin by noting that there is no direct conflict insofar as Congress has not sought to occupy the field of child support obligations and the state has not sought to purposely thwart federal AFDC regulations. See Raskin v. Moran, 684 F.2d 472 (7th Cir.1982). Furthermore, even if the federal AFDC regulation and state child support law are in conflict, that conflict would not affect state authority in cases where no AFDC family is involved. However, in child support cases involving AFDC families and thus implicating section 602(a)(38), if the enforcement of state child support provisions or policies impedes the operation of section 602(a)(38) or the policy choices it embodies, a conflict exists. See Jones v. Rath Packing Co., 430 U.S. 519, 540-41, 97 S.Ct. 1305, 1317, 51 L.Ed.2d 604 (1977); Perez v. Campbell, 402 U.S. 637, 652, 91 S.Ct. 1704, 1712, 29 L.Ed.2d 233 (1971); Raskin, 684 F.2d at 475; Dandoy, 635 F.Supp. at 189.
 
 
 34
 Although we believe that child support funds may be used to secure all of the same products and services that AFDC funds are used to obtain, we recognize that the purposes of the two income sources may be directed at different goals. The Minnesota child support guidelines, Minn.Stat.Ann. Sec. 518.551 (West.Supp.1987), provide that courts setting or modifying child support should, in addition to the parents' resources and the needs and resources of the child, consider the standard of living the child would have enjoyed had the parents' marriage not been dissolved. Id. Sec. 518.551, Subd. 5(b)(3). To the extent that this provision evinces an intent that child support must be used to sustain a standard of living not available to an AFDC family, or to the extent that it implies other restrictions in the use or distribution of child support funds, it is inconsistent with federal law. Enforcement of the state law and policy would impede the operation of the family unit filing regulation and the congressional understanding of shared expenses embodied in section 602(a)(38). We are thus presented with a conflict between state and federal law and with the question whether the supremacy clause causes section 602(a)(38) to override state child support provisions.
 
 
 35
 Our review under the supremacy clause takes on a special character because of the involvement of state family law, which will be overridden by conflicting federal law only when Congress has " 'positively required' " such a result " 'by direct enactment,' " Hisquierdo v. Hisquierdo, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979) (quoting Wetmore v. Markoe, 196 U.S. 68, 77, 25 S.Ct. 172, 176, 49 L.Ed. 390 (1904)), and when the state law does " 'major damage' " to a " 'clear and substantial' " federal interest. Hisquierdo, 439 U.S. at 581, 99 S.Ct. at 808 (quoting United States v. Yazell, 382 U.S. 341, 352, 86 S.Ct. 500, 506, 15 L.Ed.2d 404 (1966)). Congress did not openly state that it intended to override state child support law, but looking beyond the particular statutory terms, as we may, see Ridgway v. Ridgway, 454 U.S. 46, 54, 102 S.Ct. 49, 54, 70 L.Ed.2d 39 (1981); McCarty v. McCarty, 453 U.S. 210, 220-21, 101 S.Ct. 2728, 2735, 69 L.Ed.2d 589 (1981), that intent can be established from the legislative history of section 602(a)(38) and from the passage of 42 U.S.C. Sec. 602(a)(8)(A)(vi). The Senate Report specifically noted that before section 602(a)(38) was passed, children receiving child support could be excluded from the filing unit. See supra note 11. Furthermore, in section 602(a)(8)(A)(vi), see supra note 10 and accompanying text, Congress indicated that the first fifty dollars of a child's monthly child support would be disregarded in the AFDC need determination, thus indicating that it intended to reach child support when it enacted section 602(a)(38). These references to child support justify overriding state law if state law does major damage to a substantial federal interest.
 
 
 36
 We believe the interest in reducing federal expenditures represented by the Deficit Reduction Act of 1984 is a substantial federal interest. The federal deficit is an issue of great public concern, and Congress had it squarely in mind when it passed the Act. Referring to the Conference Report on the Act, Representative Rostenkowski, the Chairman of the House Committee on Ways and Means, stated:
 
 
 37
 [T]his conference report represents a significant contribution to solving the Nation's overwhelming deficit crisis. Without this down payment, there is no reason for the financial markets to assume that we will ever act responsibly on the budget. Many of the measures in the bill will be unpopular with some of our constituents, but failure to act will be even more unpopular.
 
 
 38
 130 Cong.Rec. H7085, H7087 (daily ed. June 27, 1984) (statement of Rep. Rostenkowski). Senator Dole, the Chairman of the Senate Committee on Finance, called the Act a "major step toward getting our fiscal policy back on track." 130 Cong.Rec. S8373, S8374 (daily ed. June 27, 1984) (statement of Sen. Dole). It was estimated that section 602(a)(38) would result in savings of $455 million during fiscal years 1984 through 1987. S.Rep. No. 169, 98th Cong., 2d Sess. 981 (Comm.Print 1984). Senator Dole stated that as among the income maintenance provisions affected by the Act, section 602(a)(38) was one of those having the "greatest budget impact." 130 Cong.Rec. S4097, S4099 (daily ed. Apr. 9, 1984) (statement of Sen. Dole). Although we have no way of determining the exact portion of the budget savings attributable to the effect of section 602(a)(38) on child support income as separate from Title II Social Security benefits and other income sources, we cannot say that the figure would be so insubstantial as not to do major damage to the federal interest if the amount were excluded from the budget savings.[21] We conclude, therefore, that the state child support laws, insofar as they restrain the use and distribution of child support payments in a manner contrary to section 602(a)(38), do major damage to a substantial federal interest. Consequently, under the supremacy clause the state law cannot be enforced in cases where its enforcement would interfere with the operation of the Secretary's family unit filing regulation.[22]
 
 V
 
 39
 Finally, the class members argue that the Secretary's regulation violates the due process guarantees and the prohibition on takings of private property in the fifth and fourteenth amendments to the Constitution.
 
 
 40
 First, the Gorrie class argues that the Secretary's regulation deprives the class members of their "liberty interests relating to family sanctity and family choice." Plaintiff-Appellees' Brief at 29. This substantive due process argument relies primarily on Moore v. City of East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977).[23] In Moore the Court invalidated a zoning ordinance limiting dwelling occupancy to members of a single family and narrowly defining what constituted a "family." The ordinance resulted in the criminal conviction of a grandmother who lived with two grandsons who were cousins, not brothers--a grouping that did not meet the ordinance's definition of a family. The Moore plurality found that the ordinance intruded on constitutionally protected choices concerning family living arrangements "by forcing all [of the city's citizens] to live in certain narrowly defined family patterns." Id. at 506, 97 S.Ct. at 1939; see Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 573, 69 L.Ed.2d 1070 (1925) (act requiring all children to attend public school held unconstitutional as interference with liberty of parents; state may not "standardize its children by forcing them to accept instruction from public teachers only"); Meyer v. Nebraska, 262 U.S. 390, 401-03, 43 S.Ct. 625, 627-28, 67 L.Ed. 1042 (1923) (act forbidding teaching of any language other than English held unconstitutional as in conflict with fundamental rights).
 
 
 41
 The Gorrie class members argue that the regulation is an unconstitutional infringement of their rights because it forces independently supported children to go on welfare, it disrupts the relationship between independently supported children and their supporting parents, and it compels breakup of the family unit. We do not agree. The ordinance in Moore made it a criminal act for certain family members to live together; by no stretch of the imagination does the Secretary's regulation present an equivalent infringement of family choices. Not every regulation that involves or somehow regulates on the basis of family membership is unconstitutional. We believe that "reasonable regulations that do not significantly interfere with [family choices] may legitimately be imposed." Zablocki v. Redhail, 434 U.S. 374, 386, 98 S.Ct. 673, 681, 54 L.Ed.2d 618 (1978); see Lyng v. Castillo, --- U.S. ----, 106 S.Ct. 2727, 2729, 91 L.Ed.2d 527 (1986); Califano v. Jobst, 434 U.S. 47, 58, 98 S.Ct. 95, 101, 54 L.Ed.2d 228 (1977), and that a regulation must interfere "directly and substantially," Zablocki, 434 U.S. at 387, with family choices before it is unconstitutional. The ordinance in Moore forced certain living patterns on the citizens of East Cleveland, Ohio. The Secretary's regulation does not have nearly so direct or substantial of an effect on family choices. Cf. Horton v. Marshall Pub. Schools, 769 F.2d 1323, 1332 (8th Cir.1985). The regulation merely provides eligibility guidelines for receiving AFDC, should a family choose to apply. Any compulsion to apply or to change family living arrangements comes not from threat or coercion by the government, but from a desire to increase family income through the receipt of AFDC assistance. We decline to expand the right created in Moore beyond cases where the government forces family choices to those where it only affects or encourages decisions on family matters. See Bowers v. Hardwick, --- U.S. ----, 106 S.Ct. 2841, 2846, 92 L.Ed.2d 140 (1986) (there should be "great resistance to expand the substantive reach" of the due process clauses).
 
 
 42
 Second, both classes argue that the Secretary's family unit filing regulation denies them due process of law because their child support and Title II Social Security benefits represent property rights that cannot be abrogated by a congressional presumption that precludes individual factual inquiries. The district court agreed with this argument, concluding that "the plaintiffs' interests outweigh the government's interests" and "the practicable procedural safeguard to protect the plaintiffs' interests is a pre-deprivation hearing." Gorrie I, 606 F.Supp. at 373.
 
 
 43
 The due process issue, as we understand it,[24] is whether Congress may, without denying due process rights, create a presumption of shared family expenses and thus deny child support recipients and Title II beneficiaries individual hearings on whether expenses are actually shared in their households. The class members' position is based on the irrebuttable presumption approach, which states that the due process clause prevents the use of an irrebuttable presumption "when that presumption is not necessarily or universally true in fact." Vlandis v. Kline, 412 U.S. 441, 452, 93 S.Ct. 2230, 2236, 37 L.Ed.2d 63 (1973); see Cleveland Bd. of Educ. v. LaFleur, 414 U.S. 632, 644, 94 S.Ct. 791, 798, 39 L.Ed.2d 52 (1974). The class members' reliance on this approach, however, seems misplaced in light of Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). In Salfi, the Court reviewed a Social Security duration-of-relationship requirement that irrebuttably presumed that if a marriage did not precede the wage earner's death by nine months it was entered into for the purpose of securing Social Security benefits. The Court upheld the regulation, finding that " 'the Due Process Clause can be thought to impose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.' " Salfi, 422 U.S. at 768, 95 S.Ct. at 2468 (quoting Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960)); see Schweiker v. Hogan, 457 U.S. 569, 588-92, 102 S.Ct. 2597, 2608-11, 73 L.Ed.2d 227 (1982); Schweiker v. Wilson, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981); United States Railroad Retirement Bd. v. Fritz, 449 U.S. 166, 174-76, 101 S.Ct. 453, 459-60, 66 L.Ed.2d 368 (1980); Califano v. Jobst, 434 U.S. 47, 52-54, 98 S.Ct. 95, 98-100, 54 L.Ed.2d 228 (1977); Dandridge v. Williams, 397 U.S. 471, 485-86, 90 S.Ct. 1153, 1161-62, 25 L.Ed.2d 491 (1970).
 
 
 44
 We believe that Salfi contains the appropriate standard by which to evaluate the statute and the Secretary's regulation under the due process clause.[25] Consequently, Congress' presumption of shared expenses is valid so long as it has a rational basis. See Boyd v. Bowen, 797 F.2d 624, 626-27 (8th Cir.1986). In seeking to allocate scarce public funds to those most in need, it is rational and consistent with the purposes of the AFDC program for Congress to structure AFDC eligibility determinations in a manner that focuses on the needs of family units instead of individuals. Congress could rationally conclude that family members generally combine their resources and share expenses to utilize economies of scale. See Lyng v. Castillo, --- U.S. ----, 106 S.Ct. 2727, 2730-31, 91 L.Ed.2d 527 (1986); Kollett v. Harris, 619 F.2d 134, 139 (1st Cir.1980); Termini v. Califano, 611 F.2d 367, 370 (2d Cir.1979). When the needs of families are being met without AFDC, then there is no need for AFDC because the purposes of the program are already being met.[26] Therefore, we believe that section 602(a)(38) and the Secretary's family unit filing regulation are based on a rational justification and do not deny due process rights.[27]
 
 
 45
 The third constitutional argument raised by the classes is that the Secretary's regulation effects a taking of property without just compensation.[28] Our review of the impact and character of the regulation convinces us that it does not go so far as to effect a taking of property. See Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978); Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922).
 
 
 46
 If, as we have found, Congress reasonably presumed that families share their resources and expenses, then the only actual loss from the Secretary's regulation and section 602(a)(38) to families receiving or applying for AFDC is a reduction in AFDC assistance. This result would have been more evident had Congress chosen not to make the assignment of support provision at 42 U.S.C. Sec. 602(a)(26) (Supp. III 1985) applicable in this context. If Congress had done so, child support payments would simply have been counted in family income and the amount of AFDC assistance would have been reduced. Instead, section 602(a)(26) operates to require assignment of child support to the state, which then supports the family through AFDC. Congress' interposition of section 602(a)(26), which aids in the administration of the program, does not turn section 602(a)(38) or the Secretary's regulation into provisions that unconstitutionally take private property. It is not unconstitutional for Congress to adjust AFDC assistance levels. Cf. Atkins v. Parker, 472 U.S. 115, 105 S.Ct. 2520, 2529-30, 86 L.Ed.2d 1 (1985). Moreover, it is sensible to assume that families will accept AFDC only when the amount they will receive is greater than the sum of their members' resources, including child support payments and Title II benefits. In all instances where child support is assigned to the state, the amount of AFDC assistance that comes back to the family will exceed the amount of the child support assigned to the state. These facts militate against any finding that an unconstitutional taking of private property has occurred.
 
 VI
 
 47
 We hold that the Secretary's family unit filing regulation is consistent with the statute authorizing it, with federal law governing Title II Social Security benefits, with the state's traditional authority concerning child support matters, and with the Constitution. Moreover, to the extent that state child support law interferes with the operation of the Secretary's regulation, the state law is violative of the supremacy clause. Accordingly, the judgment of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.
 
 
 48
 HEANEY, Circuit Judge, dissenting.
 
 
 49
 I respectfully dissent. The regulation in question, 45 C.F.R. Sec. 206.10(a)(1)(vii)(B) (1985), requires a reading of 42 U.S.C. Sec. 602(a)(38) (Supp. III 1985) which causes a conflict among section 602(a)(38), other federal statutes, and state law. I believe this Court should interpret section 602(a)(38) to avoid this conflict and avoid the harsh effect caused by the regulation on the members of the appellees' class. If Congress had intended the result decreed by the Secretary's regulation, it could have said so forthrightly. I don't believe that this Court should overrule the district court and deprive children of benefits that they are entitled to under the statute.
 
 
 50
 The members of appellees' class in this case are children or representatives of children who receive one of two kinds of payments: social security benefits to replace the support formerly provided by a parent now dead, disabled, or retired (Title II benefits), or child support payments under state law to replace the support of a non-custodial parent. These children live in the same household as, and have a common parent with, dependent children receiving AFDC. The Secretary's regulation requires the independently supported children and the dependent child to apply together for the AFDC benefits the dependent child seeks. Under the regulation, the Secretary can reduce the dependent child's AFDC benefits by offsetting the Title II benefits or the child support payments of the independently supported children against the AFDC benefits.
 
 
 51
 The offset required by the regulation has led to a dramatic reduction in the size of the AFDC benefits received by many dependent children. For example, Jo Anne Heille is the divorced mother of two children. One of her children received $227 a month in Title II benefits based on the social security earnings of her disabled father. The child's half-brother received $331 a month in AFDC benefits. Because the Secretary's regulation requires the Title II benefits to be offset against the AFDC benefits, the AFDC grant was reduced to $164. For some members of the class, the AFDC benefits have been terminated entirely because of the offset.
 
 
 52
 The Secretary contends that Congress intended this result under section 602(a)(38). I believe a contrary reading of the statute is required. In relevant part, section 602(a)(38) requires that in making a needs determination for a dependent child under AFDC, the states shall include "income of or available for" a co-resident sibling. The key question thus becomes whether Title II benefits and child support payments constitute "income of or available for" the co-resident sibling AFDC child.
 
 
 53
 On an intuitive level this question is deceptively straightforward. Benefits designated for a person would seem to be "income of or available for" that person. However, one must be mindful that a child receiving benefits such as Title II and state child support payments does not have direct access to that income to spend as that child chooses. Rather, these benefits are paid, because the child is a minor, to a parent or representative payee for the care of the child as directed by federal or state statute. See, e.g., 42 U.S.C. Sec. 405(j) (Supp. III 1985) (representative payee provision); Minn.Stat. Secs. 518.17; 518.54 (1969 & Supp.1987). Therefore, Title II and state child support payments should not unquestionably be classified as "income of or available for" the child receiving them.
 
 
 54
 The majority to my mind makes such a mistake when it assumes that income from Title II and child support is "clearly" income "actually available" to the minor recipient of those benefits. See at 516. This conclusion ignores a line of cases which have examined the question of availability of income under AFDC statutes and regulations.[1] In Owens v. Heckler, 753 F.2d at 675, Shelly Owens, a mother of a minor child, received Title II extended student benefits under 42 U.S.C. Secs. 401-433 (1982). Owens also received AFDC benefits on behalf of her minor child. Prior to the passage of the Omnibus Budget Reconciliation Act (OBRA) of 1981, Pub.L. No. 97-35, 95 Stat. 357, the Secretary considered Owens's Title II benefits to the mother not to be "income of or available for" her in determining her child's AFDC benefits. See id. of 676 (citations omitted). After the enactment of OBRA, the Secretary changed department policy and considered Title II extended student benefits as available income. See id. (citations omitted).
 
 
 55
 In determining whether the Title II extended student benefits were available for the minor parent and thus includable in the AFDC needs determination, this Court considered whether the Title II benefits served a purpose distinct from that of AFDC. It found that with Title II extended student benefits, Congress intended to deter students from quiting high school for financial reasons. AFDC, on the other hand, was designed to assist in the care of dependent children. Id. at 679.
 
 
 56
 Because of the distinct purposes of AFDC and Title II extended student benefits, the Court concluded that the amount of benefits "actually needed" for educational expenses should not be "available" for the minor parent in determining need under the relevant AFDC statutes and regulations. Thus, no offset of the money "actually needed" for education against the AFDC benefits would be allowed.
 
 
 57
 In the instant matter, to determine whether Title II benefits and child support payments are "income of or available for" a co-resident sibling under section 602(a)(38), we must also consider the purpose of these payments. The Title II benefits are granted to the children under 42 U.S.C. Sec. 402(d) (1982 & Supp. III 1985). A child receives Title II benefits if the child's parent was insured under the Social Security Act and the parent dies, becomes disabled, or retires. See Matthews v. de Castro, 429 U.S. 181, 185-86, 97 S.Ct. 431, 434-35, 50 L.Ed.2d 389 (1976).
 
 
 58
 Unlike "general public assistance laws," the purpose of Title II benefits is not to "pay money to those who need it the most." Id. at 185, 97 S.Ct. at 434. "Rather, the primary objective [is] to provide workers and their families with basic protection against hardships created by the loss of earnings due to illness or old age." Id. at 185-86, 97 S.Ct. at 434.
 
 
 59
 The purpose of child support payments is determined by state law. For example, in Minnesota, child support guidelines are used in the absence of a child support agreement between parents where one receives public assistance. See Minn.Stat. Sec. 518.551 (Supp.1986). These guidelines "reflect a legislative determination that children are entitled to benefit from the income of the non-custodial parent and to enjoy the standard of living that they would have had if the marriage had not been dissolved." Letourneau v. Letourneau, 350 N.W.2d 476, 478 (Minn.Ct.App.1984) (applying guidelines in nonpublic assistance case).
 
 
 60
 The purposes of both Title II and state child support systems are not merely to provide support for a child at a welfare subsistence level. Title II is a government insurance program for wage earners, and state child support laws, at least in Minnesota, are designed to keep a child of a dissolved marriage at the same "standard of living" she or he enjoyed before the marriage dissolution.
 
 
 61
 The adoption of the Secretary's interpretation of section 602(a)(38) compromises the purposes of these two long-standing benefit systems. By including a child's Title II benefits or child support payments in the AFDC needs determination of their siblings living in the same home, the Secretary in essence presumes, not only that families share income, but also that a family with one AFDC child should, as a whole, survive at the AFDC subsistence level. In doing so, the regulation puts section 602(a)(38) in conflict with the Title II statutory scheme and state child support law, neither of which intended the child recipients in its system to be forced to survive at a welfare subsistence level.
 
 
 62
 When two federal statutes conflict, a court should attempt to reconcile them. Owens, 753 F.2d at 679 (citing Markham v. Cabell, 326 U.S. 404, 411, 66 S.Ct. 193, 196, 90 L.Ed. 165 (1945)). And, when state family-property law conflicts with federal law, the state law "must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden." Hisquierdo v. Hisquierdo, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979) (citing United States v. Yazell, 382 U.S. 341, 352, 86 S.Ct. 500, 506, 15 L.Ed.2d 404 (1966)). Here, I do not believe the Secretary has demonstrated that the state child support laws do "major damage" to "clear and substantial federal interests." Nor is it expressly stated that state child support laws shall be overridden by section 602(a)(38).[2]
 
 
 63
 It thus must be determined what a reconciliation among the conflicting statutes requires. The interpretation of the term "income of or available for" in section 602(a)(38) used in Owens reconciles the conflicts with both the federal and state statutes. Following Owens, it is clear that unless section 602(a)(38) specifically includes the benefits in question as "available" income, the income should be considered "available" only to the extent it is "actually available." In this case, that means that absent a specific inclusion, only that portion of the Title II benefits and child support payments which the independently supported child "actually" makes available for the entire family should be includable as income for the AFDC assistance unit. See Gorrie v. Heckler, 606 F.Supp. 368, 371 (D.Minn.1985).
 
 
 64
 The majority finds that such an interpretation, with regard to Title II benefits ignores the specific reference in section 602(a)(38) to Title II benefits. This part of the statute requires the income of the co-resident to be included in the needs determination "notwithstanding section 405(j) of this title, in the case of benefits provided under subchapter II of this chapter." I agree with other federal courts which have held that this reference to the Title II statute is too ambiguous and incomplete to change so fundamentally the basis upon which Title II benefits are distributed.[3] The reference omits other key Title II provisions such as 42 U.S.C. Sec. 408(e) (Supp. III 1985) which makes it a felony for representative payees, e.g., custodial parents, to use Title II benefits for any purpose other than the support of the intended recipient.[4] Because the Secretary's regulation in essence presumes that a representative payee will share the Title II benefits with the entire family, it is very possible that the representative payee would be doing so in violation of section 408(e).
 
 
 65
 I recognize that the interpretation which I believe to be correct limits the sweep of the Deficit Reduction Act of 1984, an act obviously intended by Congress to reduce government spending. However, when the reach of the Act clashes with the purposes of other statutes, both federal and state, the Act must be carefully scrutinized. Here, such scrutiny is particularly warranted because the Secretary's regulation encroaches significantly on Title II and child support recipients' rights to their benefits under these programs. While this encroachment may not rise to a constitutional deprivation of property, it does in practical effect force the entire family, including the independently supported children, to subsist at an AFDC income level. This result is especially harsh considering that neither state child support nor Title II is a government entitlement program. A parent has been required to pay for the child's right to those benefits under these programs. I do not think an intent to infringe the full right to these benefits should be imputed to Congress without a clear expression of such intent.
 
 
 66
 Accordingly, I think the district court's judgment should be affirmed to the extent that the Secretary be enjoined from reducing or eliminating AFDC benefits received by a dependent child unless the Secretary reduces benefits only in the amount that a Title II or child support recipient in the same household actually shares those benefits with the household.
 
 
 
 *
 Secretary Bowen, Margaret M. Heckler's successor, was appointed during the pendency of this appeal and is substituted as the appellant. See Fed.R.App.P. 43(c)
 
 
 **
 The HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota, sitting by designation
 
 
 [1]
 The definition of "dependent child" at 42 U.S.C. Sec. 606(a) (1982), provides:
 (a) The term "dependent child" means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home (other than absence occasioned solely by reason of the performance of active duty in the uniformed services of the United States), or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) at the option of the State, under the age of nineteen and a full-time student in a secondary school (or in the equivalent level of vocational or technical training), if, before he attains age nineteen, he may reasonably be expected to complete the program of such secondary school (or such training)[.]
 
 
 [2]
 The section, as codified, provides:
 A State plan for aid and services to needy families with children must--
 * * *
 (38) provide that in making the determination under paragraph (7) with respect to a dependent child and applying paragraph (8), the State agency shall (except as otherwise provided in this part) include--
 (A) any parent of such child, and
 (B) any brother or sister of such child, if such brother or sister meets the conditions described in clauses (1) and (2) of section 606(a) of this title, if such parent, brother, or sister is living in the same home as the dependent child, and any income of or available for such parent, brother, or sister shall be included in making such determination and applying such paragraph with respect to the family (notwithstanding section 405(j) of this title, in the case of benefits provided under subchapter II of this chapter)[.]
 42 U.S.C. Sec. 602(a)(38) (Supp. III 1985).
 
 
 [3]
 42 U.S.C. Sec. 405(j)(1) (Supp. III 1985) provides:
 (1) When it appears to the Secretary that the interest of an applicant entitled to a payment would be served thereby, certification of payment may be made, regardless of the legal competency or incompetency of the individual entitled thereto, either for direct payment to such applicant, or for his use and benefit to a relative or some other person.
 
 
 [4]
 The Commissioner's Bulletin stated in part:
 Parent, minor siblings and minor half-siblings must all be included as part of the AFDC assistance unit when they reside in the same home. An application must be submitted for all members of the assistance unit. If application is not made for currently excluded parents, minor siblings or minor half-siblings by November 1, 1984, the AFDC case shall be terminated.
 Minnesota Department of Human Services, Instructional Bulletin No. 84-76, Attachment 9 (September 24, 1984).
 
 
 [5]
 The immediate effects of the family unit filing regulation on the Gorrie class are not difficult to deduce. When the income of a child receiving child support is included in the AFDC filing unit the AFDC payment will be reduced. If the class members refuse to include the child support income in their application their AFDC is terminated altogether. The same results obtain for the Heille class, although Title II Social Security benefits, and not child support, are at issue there
 
 
 [6]
 The "Gorrie class" consists of all persons in Minnesota who are: a) children receiving child support and living with siblings who receive AFDC; b) children receiving AFDC and living with siblings who receive child support; c) parents receiving child support on behalf of one or more of their children and also having custody of children who receive AFDC; and d) parents paying child support, by court order or by agreement, on behalf of children living with siblings who receive AFDC and are unrelated to the supporting parent. Gorrie v. Heckler, 624 F.Supp. 85, 93 (D.Minn.1985)
 
 
 [7]
 The children in the Heille class receive child's insurance benefits under 42 U.S.C. Sec. 402(d) (1982 & Supp. III 1985). A child may receive child's insurance benefits if the child's parent was insured within the meaning of the Social Security Act and has died, become disabled, or retired. These benefits are sometimes referred to by name as "Old-Age, Survivors, and Disability Insurance" benefits (OASDI)
 
 
 [8]
 The "Heille class" consists of all persons in Minnesota who are: a) children receiving Title II benefits and living with siblings who receive AFDC; b) children receiving AFDC and living with siblings who receive Title II benefits; and c) parents receiving Title II benefits on behalf of one or more of their children and also having custody of children who receive AFDC. Gorrie II, 624 F.Supp. at 93
 
 
 [9]
 Of course, when the independently supported children are included in the application their income is counted as available to the family. Moreover, applicants for AFDC must assign their rights to support from any other person to the state. 42 U.S.C. Sec. 602(a)(26) (Supp. III 1985). If Congress intended for independently supported siblings to be included in AFDC applications it must have intended that assignments of the siblings' child support take place. Therefore, we need not consider these issues separately, but must only discern Congress' intent on the application issue
 
 
 [10]
 42 U.S.C. Sec. 602(a)(8)(A)(vi) (Supp. III 1985) provides:
 A State plan for aid and services to needy families with children must--
 * * *
 (8)(A) provide that, with respect to any month, in making the determination under paragraph (7), the state agency--
 * * *
 (vi) shall disregard the first $50 of any child support payments received in such month with respect to the dependent child or children in any family applying for or receiving aid to families with dependent children[.]
 
 
 [11]
 The Senate Report's summary of the law before section 602(a)(38) stated in part:
 There is no requirement in present law that parents and all siblings be included in the AFDC filing unit. Families applying for assistance may exclude from the filing unit certain family members who have income which might reduce the family benefit. For example, a family might choose to exclude a child who is receiving social security or child support payments, if the payments would reduce the family's benefits by an amount greater than the amount payable on behalf of the child.
 S.Rep. No. 169, 98th Cong., 2d Sess. 980 (Comm.Print 1984).
 
 
 [12]
 Neither is this a typical principle of availability case in which a state, through its interpretation of a federal statute and regulation, is attempting to conjure fictional sources of income. See, e.g., King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) (invalidating Alabama regulation designating cohabiting men as "substitute fathers"). Congress has initiated this change in policy and procedure, and we review the Secretary's choices in implementing it. For this reason, appeals to the "fundamental purpose" of the AFDC program, Gorrie I, 606 F.Supp. at 371, also are unhelpful. We do not believe that the Secretary's regulation conflicts with the AFDC program's purpose of providing assistance to needy, dependent children. And to the extent that the Secretary's regulation represents a new approach to fulfilling the program's purpose, that approach is an attempt to implement changes initiated by Congress in the Deficit Reduction Act
 
 
 [13]
 In Owens v. Heckler, 753 F.2d 675, 681 (8th Cir.1985), this court found that AFDC benefits could not be affected by a family member's receipt of OASDI extended student benefits unless the amount needed for actual and reasonable educational expenses was excluded. The court emphasized that the benefits at issue were student benefits designated particularly for educational use, and distinguished them from other Social Security payments provided for support and maintenance. Id. at 678 & n. 10. The Title II Social Security benefits at issue here are not designated for any special use. Furthermore, Congress has indicated in section 602(a)(38) its intent to reach Title II Social Security benefits by its reference to Title II provisions. Therefore, Owens does not conflict with our discussion of the principle of availability
 
 
 [14]
 No other court of appeals has yet reviewed the Secretary's family unit filing regulation. Among the district courts, however, we are aware of a number of published decisions that agree with our view that the regulation is consistent with the statute. See Gilliard v. Kirk, 633 F.Supp. 1529, 1544-47 (W.D.N.C.) (but invalidating the regulation on constitutional grounds), prob. juris. noted, --- U.S. ----, 107 S.Ct. 641, 93 L.Ed.2d 698 (1986); Ardister v. Mansour, 627 F.Supp. 641, 644-45 (W.D.Mich.1986); Oliver v. Ledbetter, 624 F.Supp. 325, 330 (N.D.Ga.1985); Sherrod v. Hegstrom, 629 F.Supp. 150, 151-52 (D.Or.1985); Creaton v. Heckler, 625 F.Supp. 26, 29-30 (C.D.Cal.1985), appeal dismissed, 781 F.2d 1430 (9th Cir.1986); Huber v. Blinzinger, 626 F.Supp. 30, 32 (N.D.Ind.1985); Shonkwiler v. Heckler, 628 F.Supp. 1013, 1017 (S.D.Ind.1985)
 
 
 [15]
 42 U.S.C. Sec. 407(a) (Supp. III 1985) provides:
 (a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
 
 
 [16]
 A representative payee is a person selected pursuant to 42 U.S.C. Sec. 405(j) to receive benefit payments on behalf of a beneficiary who "is not able to manage or direct the management of benefit payments in his or her interest." 20 C.F.R. Sec. 404.2001(a) (1986)
 
 
 [17]
 The Commissioner, originally named as a defendant in this action, was allowed to join as a third-party plaintiff against the Secretary, Gorrie I, 606 F.Supp. at 370-71, and has submitted a brief urging that we affirm the district court's judgment
 
 
 [18]
 "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X
 
 
 [19]
 Although Garcia raises doubts about whether there are any judicially enforceable limits on congressional power deriving from federalism considerations, we suspect that there is some point at which Congress goes too far in imposing conditions on states pursuant to the spending power. See Pennhurst State School & Hosp. v. Halderman, 451 U.S. 1, 17 n. 13, 101 S.Ct. 1531, 1540 n. 13, 67 L.Ed.2d 694 (1981); Van Alstyne, The Second Death of Federalism, 83 Mich.L.Rev. 1709, 1714 n. 25 (1985); Linde, Justice Douglas on Freedom in the Welfare State, 39 Wash.L.Rev. 4, 28-31 (1964). We believe that this case is far from any such outer point, should one exist
 
 
 [20]
 "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI
 
 
 [21]
 No doubt Congress could have effected roughly the same savings by, say, reducing agricultural price supports by a small fraction or by declining to authorize the recommissioning of superannuated battleships, but under our representative form of government it is given to Congress to make such budgetary decisions
 
 
 [22]
 The district court in Gilliard v. Kirk, 633 F.Supp. 1529, 1549-51 (W.D.N.C.), prob. juris. noted, --- U.S. ----, 107 S.Ct. 641, 93 L.Ed.2d 698 (1986), found that section 602(a)(38) preempted state child support laws but then concluded that it was unconstitutional. The Supreme Court has noted probable jurisdiction over an appeal in that case, which presents issues concerning the takings clause, the due process clause, and the equal protection component of the fifth amendment
 
 
 [23]
 The Moore case produced opinions by six Justices, with no single opinion representing the views of a majority. Four Justices joined the opinion of Justice Powell, which relied on substantive due process analysis. Justice Stevens concurred in the judgment, but on entirely different grounds. Three of the four dissenting Justices rejected the plurality's substantive due process approach
 
 
 [24]
 The parties have been unable to agree on the precise focus of this issue. We view the issue as a challenge of the validity of the congressional presumption of shared expenses under the equal protection principles inherent within the due process clause of the fifth amendment. The nature of the congressional presumption precludes individual factual inquiries. If the presumption is invalid, however, individual fact finding might then become necessary. Although the district court failed to determine whether the congressional presumption was valid before examining the need for individual procedures, both sides have, correctly in our view, presented arguments that run to the substantive validity of the congressional presumption
 
 
 [25]
 We follow the Salfi approach for two reasons. First, we are uncertain of the continuing force of the irrebuttable presumption approach of Vlandis. Vlandis was at least limited by Salfi, see Elkins v. Moreno, 435 U.S. 647, 660, 98 S.Ct. 1338, 1346, 55 L.Ed.2d 614 (1978), leaving "legitimate doubt" whether anything remains of Vlandis. Toll v. Moreno, 458 U.S. 1, 48, 102 S.Ct. 2977, 3002, 73 L.Ed.2d 563 (1982) (Rehnquist, J., dissenting); see United States v. Locke, 471 U.S. 84, 110, 105 S.Ct. 1785, 1801, 85 L.Ed.2d 64 (1985) (O'Connor, J., concurring); G. Gunther, Constitutional Law 969-71 (10th ed. 1980). Alternatively, Vlandis possibly has come to mean "when a presumption is unconstitutionally overbroad, the preferred course of adjudication is to strike it down." See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 105 S.Ct. 3249, 3274, 87 L.Ed.2d 313 (1985) (Marshall, J., concurring in part and dissenting in part) (citing Vlandis ). If this is so, it would seem largely indistinguishable from the Salfi standard. Second, insofar as Vlandis survives in cases where fundamental interests are involved, see Salfi, 422 U.S. at 771-72, 95 S.Ct. at 2469-70, we have found that the Secretary's regulation does not unconstitutionally infringe on the class members' protected family interests
 
 
 [26]
 We realize that the congressional presumption of shared expenses may affect some families that do not actually share expenses. Inherent in the nature of the presumption, however, is Congress' direction that "the expense and other difficulties of individual determinations justif[y] the inherent imprecision of a prophylactic rule." Salfi, 422 U.S. at 777, 95 S.Ct. at 2473
 
 
 [27]
 A number of district courts have reached the same conclusion. See Oliver v. Ledbetter, 624 F.Supp. 325, 331-32 (N.D.Ga.1985); Sherrod v. Hegstrom, 629 F.Supp. 150, 152-53 (D.Or.1985); Huber v. Blinzinger, 626 F.Supp. 30, 32-33 (N.D.Ind.1985)
 
 
 [28]
 We concluded in part III that if Congress intended coresident siblings to become AFDC applicants, then it also must have intended for 42 U.S.C. Sec. 602(a)(26) (Supp. III 1985) to operate, causing the assignment of child support payments to the state. See supra note 9. The Gorrie class argues that application of the assignment provision here would constitute a taking of their child support in violation of the fifth amendment. Although Title II Social Security benefits are not subject to assignment to the state, the Heille class argues that they experience a taking because "[t]he effect of the new rule is no different than if these Social Security benefits were treated as though they were child support income and a mandatory assignment of the Social Security benefits was required." Intervenor-Appellees' Brief at 39
 
 
 [1]
 See Owens v. Heckler, 753 F.2d 675, 679-80 (8th Cir.1985) (citing, e.g., Snider v. Creasy, 728 F.2d 369 (6th Cir.1984)); Riddick v. D'Elia, 626 F.2d 1084 (2d Cir.1980) (Title II benefits paid to mother's representative payees); Turchin v. Butz, 405 F.Supp. 1263 (D.Minn.1976) (Minnesota non-WIN training allowance); Elam v. Hanson, 384 F.Supp. 549 (N.D.Ohio 1974) (Title II extended student benefits paid to full-time students between ages of 18 and 22); but see Sturgell v. Creasy, 640 F.2d 843 (6th Cir.1981) (veteran's nonservice-connected VA disability pension); Bosh v. Fahey, 53 N.Y.2d 896, 423 N.E.2d 49, 440 N.Y.S.2d 626 (1981) (Title II extended student benefits paid to full-time students between ages of 18 and 22)
 
 
 [2]
 Nor do I believe that the legislative history of section 602(a)(38) supports the conclusion that section 602(a)(38) was intended to override the relevant Title II provisions and state child support laws by making Title II benefits and child support payments available for the assistance unit. First, the Secretary's letter of May 25, 1983, cited by the majority, was written a year before the passage of 602(a)(38) and thus has questionable significance as legislative history. Red Lion Broadcasting Co. v. FCC 395 U.S. 367, 382 n. 11, 89 S.Ct. 1794, 1802 n. 11, 23 L.Ed.2d 371 (1969). Furthermore, nowhere is it explicitly stated that 602(a)(38) was intended to reach Title II benefits or child support payments. Nor does the legislative history suggest that the principle of "actual availability" used in Owens be abandoned. The terms "income" and "available" are not further defined in the legislative history cited by the majority
 
 
 [3]
 See e.g., White Horse v. Heckler, 627 F.Supp. 848 (D.S.D.1985); Frazier v. Pingree, 612 F.Supp. 345, 347-48 (M.D.Fla.1985)
 
 
 [4]
 The majority also states that Cunningham v. Toan, 762 F.2d 63 (8th Cir.1985), supports its position that section 602(a)(38) is consistent with the representative payee obligations. Cunningham involved a minor parent who lived with her parents and received Title II benefits and AFDC benefits in behalf of her child. This Court held that the Title II benefits of the minor parent were income "available for" her under section 602(a)(38) and thus includable in her child's AFDC needs determination. Id. at 66. Cunningham can be distinguished from this case in that a parent has an obligation to support a child under state law. See, e.g., Minn.Stat. Sec. 609.375 (Supp.1987) (criminal support of spouse or child). This obligation is recognized in the Title II scheme under 42 U.S.C. Sec. 659(a) (Supp. III 1985) which allows a parent's Title II benefits to be garnished for child support payments. In contrast, this case involves siblings who have no legal obligation to support each other. The conflict between the Secretary's regulation and Title II is thus more pronounced