**Jenna SKIDGEL, et al., Plaintiffs, Appellees,**

v.

**MAINE DEPARTMENT OF HUMAN SERVICES, Defendant, Appellee.**

v.

**Louis W. SULLIVAN, Defendant, Appellant.**

**Jenna SKIDGEL, et al., Plaintiffs, Appellees,**

v.

**MAINE DEPARTMENT OF HUMAN SERVICES, Rollin Ives, Defendants, Appellants.**

**Nos. 92-1764, 92-1824.**

United States Court of Appeals, First Circuit.

Heard Dec. 10, 1992.

Decided June 3, 1993.

[redacted]

Marina E. Thibeau, Asst. Atty. Gen., and Michael E. Carpenter, Atty. Gen., on brief, for defendant-appellant Rollin Ives, Com'r, ME Dept. of Human Services.

John F. Daly, Appellate Staff, Civ. Div., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and Richard S. Cohen, U.S. Atty., and Robert S. Greenspan, were on brief, for third-party defendant-appellant Louis W. Sullivan, Secretary of Health and Human Services.

Frank D'Alessandro, with whom James Crotteau, Patricia Ender, and Pine Tree Legal Assistance, were on brief, for plaintiffs-appellees.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

BOWNES, Senior Circuit Judge.

The Secretary of the Department of Health and Human Services (HHS) and the Maine Department of Human Services (DHS) appeal a decision of the district court invalidating and enjoining the enforcement of certain regulations and policies regarding Aid to Families with Dependent Children (AFDC), upon finding that they conflicted

with the plain language of the Social Security Act, 42 U.S.C. § 601 *et seq.*

At issue is the application of two distinct provisions of the Social Security Act, 42 U.S.C. § 602(a)(38), covering the composition of the AFDC filing unit,[1] and 42 U.S.C. § 607(b)(1)(B)(iv), covering the deduction of unemployment compensation from an AFDC payment,[2] to a particular situation. That situation occurs where the principal wage-earner in a two-parent household becomes unemployed, and the household includes both at least one child common to the two parents and at least one child who is the stepchild of the principal earner. The stepchild[ren] of the principal earner receive AFDC, pursuant to 42 U.S.C. § 606(a), because they are deprived of parental support due to the contin-

uous absence from the home, death or incapacity of a parent.[3] Prior to the unemployment of the principal earner, neither the principal earner nor the child[ren] common to both parents are included in the family filing unit.

Pursuant to HHS/DHS policy and regulations, once the principal earner becomes unemployed, the family filing rule requires that the principal earner and the child[ren] common to both parents be included in the filing unit, as well.[4] Such inclusion is required because the child[ren] are considered dependent under a separate provision of the statute, 42 U.S.C. § 607(a), due to the unemployment of the parent who is the principal earner.[5] According to the Secretary's interpreta-

---

1. 42 U.S.C. § 602(a)(38) provides, in pertinent part, that,

   in making the determination under paragraph (7) with respect to a dependent child and applying paragraph (8), the State agency shall (except as otherwise provided in this part) include—

   (A) any parent of such child, and

   (B) any brother or sister of such child, if such brother or sister meets the conditions described in clauses (1) and (2) of section 606(a) of this title or in section 607(a) of this title,

   if such parent, brother, or sister is living in the same home as the dependent child, and any income of or available for such parent, brother, or sister shall be included in making such determination ...[.]

   We refer to the AFDC filing unit as the family filing unit, and to this provision of the statute as the family filing rule.

2. 42 U.S.C. § 607(b)(1)(B)(iv) provides,

   for the reduction of the aid to families with dependent children otherwise payable to any child or relative specified in subsection (a) of this section by the amount of any unemployment compensation that such child's parent described in subparagraph (A)(i) receives under an unemployment compensation law of a State or of the United States ...[.]

3. 42 U.S.C. § 606(a) provides:

   The term "dependent child" means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home (other than absence occasioned solely by reason of the performance of active duty in the uniformed services of the United States), or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cous-

   in, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) at the option of the State, under the age of nineteen and a full-time student in a secondary school (or in the equivalent level of vocational or technical training), if, before he attains age nineteen, he may reasonably be expected to complete the program of such secondary school (or such training)[.]

4. The Secretary's interpretation of the family filing rule has been embodied in regulations and official transmissions. *See* 45 C.F.R. § 206.-10(a)(1)(vii) which provides, in part, that,

   in order for the family to be eligible, an application with respect to a dependent child must also include, if living in the same household and otherwise eligible for assistance:

   (A) Any natural or adoptive parent, or stepparent (in the case of States with laws of general applicability); and

   (B) Any blood-related or adoptive brother or sister....

   *See also* SSA Transmittal 86–1 at 9 (Jan. 12, 1986) (on two-step process whereby application of family filing rule must precede determination of need).

5. 42 U.S.C. § 607(a) provides:

   The term "dependent child" shall, notwithstanding section 606(a) of this title, include a needy child who meets the requirements of section 606(a)(2) of this title, who has been deprived of parental support or care by reason of the unemployment (as determined in accordance with standards prescribed by the Secretary) of the parent who is the principal earner, and who is living with any of the relatives specified in section 606(a)(1) of this title in a place of residence maintained by one or more of such relatives as his (or their) home.

tion of the family filing rule, the common child[ren] now meet "the conditions described in ... § 607(a)." 42 U.S.C. § 602(a)(38).

In the case of the plaintiff class,[6] the unemployment compensation received by the principal earner is then subtracted from the AFDC benefit payable to the newly-composed family filing unit. Pursuant to 45 C.F.R. § 233.20(a)(3)(ii)(B), unemployment compensation is not considered as income and does not figure into the calculation of need, but is deducted from the AFDC payment after the amount of that payment has been established.[7] This special treatment of unemployment compensation is the Secretary's interpretation and implementation of 42 U.S.C. § 607(b)(1)(B)(iv). The practical result of the HHS/DHS policies is a reduction of the AFDC payment going to families in the plaintiff class.[8]

Plaintiffs brought this action against defendant Rollin Ives, Commissioner of the Maine Department of Human Services, arguing that the State was violating federal statutory standards in determining the amount of AFDC payments going to members of their class. Ives filed a third-party complaint against Louis Sullivan, Secretary of the United States Department of Health and Human Services. The case went to the district court on a stipulated record.

In a memorandum decision, the district court ruled in favor of the plaintiffs on the grounds that the HHS/DHS interpretations of both the family filing rule, 42 U.S.C. § 602(a)(38), and the provision regarding unemployment compensation, 42 U.S.C. § 607(b)(1)(B)(iv), impermissibly conflicted with the plain meaning of the statute. *See Skidgel v. Ives*, No. 90–0209–B, slip op. (D.Me. Jan. 2, 1992) [hereinafter Memorandum Decision]. The district court read the family filing rule to require that children defined as dependent under § 607(a) be determined financially "needy" before they could be included in the filing unit. *See id.* at 7. The district court also determined that § 607(b)(1)(B)(iv), by its express terms, applies only to children eligible under § 607(a),

6. The class was certified as follows:
    All households in the State of Maine who are recipients of AFDC benefits as of November 16, 1990, or who will apply for AFDC benefits on or after November 16, 1990, and whose household composition includes at least two adults and two children where at least one child is the child of one but not both of the adults in the household and at least one child is the child of both adults in the household and where the adult who is not the parent of the first child receives unemployment benefits.

7. 45 C.F.R. § 233.20(a)(3)(ii)(B) provides:
    In determining financial eligibility and the amount of the assistance payment all remaining income (except unemployment compensation received by an unemployed principal earner) and, except for AFDC, all resources may be considered in relation to either the State's need standard or the State's payment standard. Unemployment compensation received by an unemployed principal earner shall be considered only by subtracting it from the amount of the assistance payment after the payment has been determined under the State's payment method[.]

8. The operation of these policies can be illustrated by taking the case of one of the plaintiffs, Deborah Blake. Ms. Blake and her husband live with their mutual child, Shawn Blake, and Ms. Blake's two children, James and Courtney Morton. While Mr. Blake was employed, the family received AFDC for Ms. Blake's children, James

and Courtney Morton, who met the definition of dependent children provided in § 606(a) of the statute. At that time, the family filing rule required that the two dependent children, James and Courtney, and their parent, Ms. Blake, be included in the filing unit. The rule did not require the inclusion of either Shawn Blake, because he was not considered a dependent child, or Mr. Blake, because he was not the parent of an AFDC-eligible child. A portion of Mr. Blake's income was, however, deemed available to the filing unit, pursuant to the stepparent deeming rule, explained *infra* Part I, Section A. Before the unemployment of Mr. Blake, the family received $453.00 each month in AFDC, and Mr. Blake earned $697.00 a month.

Once Mr. Blake became unemployed, the family filing rule required the inclusion of both Shawn (who then met the definition of a dependent child in § 607(a)) and his parent, Mr. Blake. Because unemployment compensation is disregarded in the determination of need, the new filing unit initially met the criteria for the maximum AFDC payment for a family of five, $685.00. Pursuant to regulations interpreting § 607(b)(1)(B)(iv), the State then subtracted the amount of unemployment compensation received by Mr. Blake, $498.80, from the maximum AFDC payment of $685.00, to arrive at an AFDC payment of $186.00. Although the total level of government income going to the family increased following Mr. Blake's unemployment, the AFDC payment decreased considerably.

and does not reach children eligible under § 606(a). *See id.* at 4–5. On March 23, the court issued a final judgment enjoining the enforcement of the implicated HHS/DHS policies and regulations. *See Skidgel v. Ives*, No. 90–0209–B–H, slip op. (D.Me. Mar. 23, 1992) (final judgment).

Plaintiffs/appellees urge us to affirm the district court's decision. Defendants/appellants argue that the district court's reading of 42 U.S.C. § 602(a)(38) contravenes the very purpose of the rule, and draws an artificial distinction between § 606(a) children and § 607(a) children. As a result of the district court's holding, non-needy children who meet the definition of a dependent child provided in § 607(a) are not compulsorily included in the family filing unit. By contrast, the weight of federal authority requires non-needy children who meet the definition of a dependent child provided in § 606(a) to be so included. *See* discussion *infra* Part II, Section A 3. With respect to the district court's reading of § 607(b)(1)(B)(iv), it is defendants' position that the court failed to consider textual ambiguity and ultimately neglected to reconcile its reading with the family filing rule, 42 U.S.C. § 602(a)(38). For the reasons that follow, we reverse the decision of the district court.

## I.

### *Statutory and Regulatory Scheme*

AFDC is a cooperative federal-state program authorized by Title IV–A of the Social Security Act, 42 U.S.C. § 601 *et seq.* The AFDC program provides cash assistance to certain needy families with dependent children. The program is administered by the states in accordance with the Social Security Act and the regulations and directives of the Secretary of HHS. We begin with a brief explanation of the implicated statutory provisions and the regulations and policies which implement them.

### *A. Determination of Financial Need*

In addition to meeting other eligibility requirements, families receiving AFDC must be financially needy. The main statutory provision covering need is 42 U.S.C. § 602(a)(7), which provides guidelines to state agencies for assessing the resources available to a family unit. In the paragraph which follows, 42 U.S.C. § 602(a)(8), Congress sets forth criteria for certain income that may be disregarded in the determination of need. The family filing rule, 42 U.S.C. § 602(a)(38), establishes the individuals whose resources must be considered in determining need in accordance with 42 U.S.C. §§ 602(a)(7) and (8).

Financial eligibility is determined by comparing a family unit's countable income (i.e., income remaining after disregards allowed by law) to the standard of need adopted by the State. The standard of need is "the amount deemed necessary by the State to maintain a hypothetical family at a subsistence level." *Shea v. Vialpando*, 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120 (1974). States assign a standard according to the size of the unit applying for AFDC. In 1990 in Maine the standard of need for a family of four was $819.00. An AFDC payment in Maine is calculated by subtracting a family unit's countable income, other than unemployment compensation received by a principal earner, from the standard of need established for the relevant family size. States are not, however, required to provide families with the full standard of need. In Maine, the maximum AFDC payment is a fixed percentage (69.4%) of the standard of need. Maine permits families to fill the "gap" between the need standard and the maximum payment standard without penalty. In other words, families with countable income below the need standard, but above the level of payment paid by the State, may still receive the maximum payment from the State. This gap has practical ramifications in the instant case because of the operation of the stepparent deeming rule, codified at 42 U.S.C. § 602(a)(31). In the case of the plaintiff class, prior to the unemployment of the principal earner the family filing unit did not include either the principal earner or the half-siblings who were not then dependent children for the purposes of the statute. *See* 42 U.S.C. § 602(a)(38). A portion of the stepparent's income was, however, "deemed" available to the unit, pursuant to the stepparent deeming rule. For many in the plaintiff

class, the income deemed available fell within the gap permitted by the State, so that when the principal earners were employed, the AFDC benefit to the unit eligible under § 606(a) either was not affected or was only marginally affected by the deemed income.

## B. Unemployment Compensation and § 607

The current AFDC statute provides for two categories of "dependent children": those defined in § 606(a), who are deprived due to the continuous absence, death or incapacity of a parent, and those defined in § 607(a), who are deprived due to the unemployment of the parent who is the principal earner. As originally enacted, AFDC was limited to the category of children defined in § 606(a). In the 1960's, Congress expanded the program to include children deprived because of a parent's unemployment. At that time, the so-called AFDC–UP program (unemployed parent, earlier called AFDC–UF, for unemployed father) was available only to those families who were not receiving unemployment benefits. *See Philbrook v. Glodgett,* 421 U.S. 707, 711, 95 S.Ct. 1893, 1897, 44 L.Ed.2d 525 (1975). In *Philbrook,* the Supreme Court decided, in essence, that parents had the choice of applying either for unemployment compensation or for AFDC. *See id.* at 719, 95 S.Ct. at 1901. In response to the *Philbrook* decision, Congress amended the statute to assure that unemployed parents would seek and obtain unemployment compensation first, and that AFDC payments would be used only to "supplement UC benefits up to AFDC–UF levels." *See* H.R. CONF.REP. NO. 1745, 94th Cong., 2d Sess. 28 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5997, 6048–49. The 1976 amendment was the predecessor to the current §§ 607(b)(1)(B)(iii) and (iv). *See* Pub.L. No. 94–566, § 507(a)(2), 90 Stat. 2688 (1976) (originally codified at 42 U.S.C. §§ 607(b)(2)(C) and (D) (1976)).

## C. The Family Filing Rule

Prior to 1984, families applying for AFDC lawfully could choose to exclude household members from the filing unit if those members had resources that would reduce the family's benefit or make the family ineligible for AFDC. In 1983, the Secretary of HHS proposed an amendment "'to establish uniform rules on the family members who must file together for AFDC, and the situations in which income must be counted.'" *Bowen v. Gilliard,* 483 U.S. 587, 592, 107 S.Ct. 3008, 3012, 97 L.Ed.2d 485 (1987) (citing Letter of 25 May 1983, to the Honorable George Bush, President of the Senate). As part of the Deficit Reduction Act of 1984, Pub.L. No. 98–369, (DEFRA), Congress amended the AFDC program by adopting the family filing rule. *See* 98 Stat. 1145 (1984) (codified, as amended, at 42 U.S.C. § 602(a)(38)). The legislative purpose behind the enactment of the rule, as reported by the Senate Finance Committee, was as follows:

" 'Present Law

" 'There is no requirement in the present law that parents and all siblings be included in the AFDC filing unit. Families applying for assistance may exclude from the filing unit certain family members who have income which might reduce the family benefit. For example, a family might choose to exclude a child who is receiving social security or child support payments, if the payments would reduce the family's benefits by an amount greater than the amount payable on behalf of the child....

" 'Explanation of Provision

" 'The provision approved by the Committee would require States to include in the filing unit the parents and all dependent minor siblings (except SSI recipients and any stepbrothers and stepsisters) living with a child who applies for or receives AFDC....

" 'This change will end the present practice whereby families exclude members with income in order to maximize family benefits, and will ensure that the income of the family members who live together and share expenses is recognized and counted as available to the family as a whole.'"

*Bowen,* 483 U.S. at 593–94, 107 S.Ct. at 3013 (quoting from S. Print No. 98–169, 980 (1984)). Thus, the amendment sought to compel the inclusion in the family filing unit

of dependent children living in the same home as the child receiving AFDC. When it was enacted, the family filing rule required only the inclusion of § 606(a) children, children who were deprived due to the continuous absence, incapacity or death of a parent. As part of the Tax Reform Act of 1986, Congress amended § 602(a)(38) to include children who meet the conditions described in § 607(a). *See* 100 Stat. 2085, 2917 (1986) (§ 1883(b)(2)(A) of the Act). Under a subsection entitled, "Technical Corrections to AFDC and Child Support Programs," the Senate Report accompanying the amendment explained that no distinction between children deprived due to the absence, incapacity or death of a parent, and those deprived due to the unemployment of a parent, was intended. S. REP. NO. 313, 99th Cong., 2d Sess. 1074 (1986).[9]

## II.

### *Analysis*

The issues involved in this case are purely ones of statutory construction. Our review is, therefore, de novo. *United States v. M.I.M.*, 932 F.2d 1016, 1019 (1st Cir.1991). *See generally Commonwealth of Mass. v. Lyng*, 893 F.2d 424, 428 (1st Cir.1990) (questions of law decided by a trial court are not binding on the reviewing court).

### A. *The Family Filing Rule*

#### 1. Background

■ We begin by addressing the application of the family filing rule, 42 U.S.C. § 602(a)(38), to the plaintiff class. The rule provides that in making the determinations of need with respect to a dependent child, states must include any parent of a dependent child and any brother or sister if such brother or sister "meets the conditions described in clauses (1) and (2) of section 606(a) or in section 607(a)." *Id.* Plaintiffs challenge the State's practice of including the

child common to both parents in the family filing unit because, under the Secretary's interpretation, the child meets the conditions described in § 607(a). We must determine what Congress meant when it referred to the "conditions described" in § 607(a); in particular, whether Congress intended to incorporate need as a condition that must be met before a child may be included in the filing unit. Although several courts have interpreted the family filing rule with respect to children defined as dependent under § 606(a), the rule as originally enacted, none has specifically interpreted the rule with respect to § 607(a) children. *See* discussion *infra* Part II, Section A 3.

The district court held that the family filing rule requires the inclusion of children who meet the definition of dependent found in § 607(a) only if such children are first determined to be needy. In so holding, the district court recognized the abundance of federal authority requiring the inclusion of children defined as dependent in § 606(a) without such a prior determination of need. *See* Memorandum Decision at 7 n. 11. The district court's reason for distinguishing between these categories of children centered on the placement of the word "needy" in the respective sections of 606(a) and 607(a). Both sections begin by stating that "the term 'dependent child' means a needy child" who meets certain conditions. 42 U.S.C. §§ 606(a) and 607(a). The essence of the district court's distinction was that, because the word "needy" appears before clauses (1) and (2) in § 606(a),[10] it is not to be considered in making the determination under § 606(a) for the reason that the family filing unit rule refers only to the conditions specified in those clauses. In § 607(a), by contrast, the word needy appears within the section which is not broken into numbered clauses, and the family filing rule simply

---

**9.** The Senate Report provides, in part, that,

no such distinction between these two categories was intended, and this provision will clarify that, in a State that provides AFDC on the basis of the unemployment of a parent, siblings who are dependent for that reason must be included in the AFDC unit.

*Id.*

**10.** *See supra* note 3. The statute begins, "[t]he term 'dependent child' means a needy child (1) who has been deprived of parental support ... [.]"

references § 607(a).[11] The placement of the word "needy" was the sole basis for what the district court found to be the plain meaning of·the rule.

■ Our inquiry does not end with the placement of the word "needy" in § 607(a) of the statute. We examine the family filing rule in the context of its place in the statutory scheme and in light of its statutory purpose. *See Conroy v. Aniskoff,* —— U.S. ——, 113 S.Ct. 1562, 123 L.Ed.2d 229 (1993) (noting the " 'cardinal rule that a statute is to be read as a whole' " and that "the meaning of statutory language, plain or not, depends upon context." (citations omitted)); *Evans v. Commissioner, Maine Dep't. of Human Servs.,* 933 F.2d 1, 5 (1st Cir.1991) (concluding on the basis of the language of the statute as read in the context of its structure and in the light of its purposes). *Cf. St. Luke's Hosp. v. Secretary of Health and Human Servs.,* 810 F.2d 325, 331 (1st Cir.1987) (applying a detailed analysis after an initial, literal reading of the statute). A thorough analysis is especially warranted where, as here, we are charged with interpreting a complex and technical statute which has been amended over time and which contains elaborate, internal cross-references.

■ As we explain ·below, we think that the term "conditions described" in the family filing rule is ambiguous with respect to children defined as dependent under· § 607(a). When we find such ambiguity in a statute, we give considerable weight to the interpretation rendered by the agency charged with administering that statute. *See Evans,* 933 F.2d at 7. Our examination of the language in the context of its place in the statutory scheme and in light of its statutory purpose convinces us that the Secretary's interpretation of § 602(a)(38)(B) is not only permissible, but fully consonant with the will of Congress. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984) (explaining that if a statute is silent or ambiguous with respect to the issue presented, the question for the court is whether the

agency's answer is based on a permissible construction of the statute).

## 2.. Ambiguity

The district court assumed that Congress meant the term "conditions described" to incorporate all of the terms listed in the cross-referenced section 607(a), and thus to include the term "needy." Although the term "needy" plainly appears in § 607(a), it does not necessarily follow that Congress intended for that term to be a "condition described" for the purpose of § 602(a)(38). Section 607(a) and § 606(a) function in the statutory scheme to define the two categories of "dependent children" who may be eligible for AFDC. Regardless of which categorical definition is used, no child or family may receive AFDC unless that child or family is financially needy. The family filing rule has a different function in the statutory scheme; that of defining the unit pursuant to which need is be determined under § 602(a)(7). This function is apparent from the plain terms of the rule, itself, which begins: "in making the determination under paragraph (7) ... a State agency shall include...." As discussed *supra* in Part I Section A, need for AFDC purposes ·is not a fixed .condition; its assessment depends on a variety of factors. To assume that Congress intended to include need among the "conditions described" for the.purpose of the family filing rule—which, by its plain terms, exists prior to the assessment of need and as a basis for the definition of need—is not the most sensible reading of the rule.

We find that it is not clear from the face of the rule which conditions Congress intended to include when it referred to the "conditions described" in § 607(a). While in the abstract, it might be reasonable to presume that a reference to the "conditions described" in a cross-referenced section refers to all descriptive terms contained in that section, such a reading is problematic in this context. By including "needy" as a "condition[ ] described," the district court's interpretation does not properly account for,· and reads.

---

**11.** *See supra* note 5. Section 607(a) has no demarcated clauses, and simply begins, "[t]he term 'dependent child' shall, notwithstanding section 606(a) of this title, include a needy child who has been deprived of parental support...."

circularity into, the facially-evident function of the family filing rule.

### 3. Case Law and Legislative History

Our examination of the case law interpreting the family filing rule as originally enacted, and the legislative history behind Congress' amendment of the rule to add § 607(a), leads us to conclude that the district court's interpretation is erroneous and to uphold the Secretary's policy.

Part of examining the language in context entails reviewing the case law which has interpreted the family filing rule to compel the inclusion of non-needy children defined as dependent under § 606(a). Overwhelmingly, courts have rejected the argument that a child must be needy before that child is to be included in the family filing unit. *See Gorrie v. Bowen,* 809 F.2d 508, 513–16 (8th Cir.1987). *See also Bradley v. Austin,* 841 F.2d 1288, 1294 (6th Cir.1988); *Creaton v. Bowen,* 826 F.2d 6 (9th Cir.1987); *Oliver v. Ledbetter,* 821 F.2d 1507, 1513 (11th Cir. 1987). The Supreme Court, in a case upholding the constitutionality of the family filing rule, dismissed the argument in a footnote, citing to clear legislative intent to include non-needy children in the family filing unit. *See Bowen,* 483 U.S. at 593 n. 5, 107 S.Ct. at 3013 n. 5. The Court commented that construing the rule to require the inclusion of only needy children was "completely inconsistent with the intent of Congress as explained in the Secretary's request for legislation, in the Senate Print, and in the Conference Report as well." *Id.* Rather than pursuing its own analysis, the Court noted its satisfaction with that performed by the district court in *Gilliard v. Kirk,* 633 F.Supp. 1529, 1548 (W.D.N.C.1986), and made favorable reference to the Eighth Circuit's decision in *Gorrie,* 809 F.2d at 513–516. *See Bowen,* 483 U.S. at 587 n. 5, 107 S.Ct. at 3010 n. 5.

The express purpose behind the enactment of the family filing rule, as apparent in the Senate Print referenced by the Supreme Court and cited and discussed *supra* in Part I, Section C, was to change the practice whereby families could exclude children who had other resources, i.e., children who were not independently needy, from the family filing unit. *See Bowen,* 483 U.S. at 599, 107 S.Ct. at 3016 (noting that the purpose of the rule is to "deny [ ] a family the right to exclude a supported child from the filing unit"). This legislative history formed the cornerstone of the district court's reading of the family filing rule to require the inclusion of non-needy children in *Gilliard,* 633 F.Supp. at 1546.

It is true that in *Gorrie,* the other case cited by the Supreme Court, the court began with the language of § 606(a) and was initially persuaded by the placement of the word "needy" outside the numbered clauses. The court did not rest its conclusion solely on this reading, however, but went on to do a detailed, contextual analysis of the family filing rule. The detailed analysis corroborated that court's initial reading of the rule to require the inclusion of non-needy children in the family filing unit. *See Gorrie,* 809 F.2d at 513–16.

Unlike the court in *Gorrie,* the district court in the instant case stopped with its reading of § 607(a). The court did not go on to consider the particular meaning that term might have in the context of the family filing rule. Had the district court continued to perform a detailed analysis, it would have discovered that the legislative purpose of the rule, and its function in the statutory scheme, were not served by its reading. Like the Supreme Court, we conclude that the real problem with construing the rule to require the exclusion of non-needy children is that such a construction flies in the face of Congressional intent to end the practice of excluding non-needy children from the filing unit. We are not persuaded by the truncated reading of the district court, but proceed to address the district court's correct concern that § 607(a) is drafted differently from § 606(a).

The word "needy" appears in § 607(a), and the family filing rule references the entire section, whereas the "needy" is offset in § 606(a) and the family filing rule refers to clauses that do not contain that term. The question is what effect to give to that difference, given the function of the rule in the statutory scheme, its purpose, and the man-

ner in which the rule has been interpreted. In other words, was Congress' cross-reference to a previously-drafted section of the statute in which the criterion of need is not set off in a separate clause but appears within the referenced section, a clear signal of its intent to include need as one of the "conditions described" as applied to § 607(a) children? We do not think so.

First, to the extent that the issue is the exclusion of non-needy children from the family filing unit, the same analysis of legislative purpose used with respect to § 606(a) children applies to this case. Moreover, in the previously-cited Senate Print accompanying the DEFRA amendment, the Congress made clear who the exceptions to the family filing rule were to be. Namely, the provision would require the inclusion of all dependent minor children except SSI recipients and stepchildren. *See Bowen, supra* Part I, Section C (citing S. Print No. 98–169 at 980). Otherwise, the family filing unit rule was intended to be an inclusive rule, inclusive especially of non-needy siblings.

Second, the Congressional history behind the amendment of 42 U.S.C. § 602(a)(38), to include children eligible under § 607(a), unambiguously expresses Congress' intention not to distinguish between children eligible under the two sections. *See* S.REP. NO. 313 at 1074, *supra* note 9 and accompanying text. Congress, having omitted a reference to § 607(a) children in the original rule, stated that it intended to create no such distinction between children eligible under § 606(a) and children eligible under § 607(a). That Congress labeled the amendment a "[t]echnical [c]orrection[ ]" further underscores its intention against substantively different treatment of these categories of children. In sum, we ascertain no basis for a finding that Congress intended to treat these categories of children in a substantively different manner, permitting the exclusion of non-needy children eligi-

ble under § 607(a), but compelling the inclusion of such children eligible under § 606(a).[12]

In overturning the finding of the district court, we note that this matter of statutory construction is made difficult by the patchwork manner in which the AFDC statute has been enacted. We deal with a statute, and a section within a statute, which has been amended frequently, and which is not rewritten in its entirety with each amendment. As we observed in *Sweeney v. Murray,* 732 F.2d 1022, 1024–25, 1027 (1st Cir.1984), with regard to a different subsection of the AFDC statute, the provision at issue in this case is anything but elegantly drafted, but its legislative directive is comparatively clear. We hold that the Secretary's policy of requiring the inclusion of non-needy § 607(a) children in the filing unit resonates with the legislative purpose of the rule and upholds its integrity in the statutory scheme.

## B. The Reduction of AFDC by Unemployment Compensation

■ The final issue is more difficult. The district court held that the HHS/DHS practice of reducing AFDC payments by the amount of the stepparents' unemployment conflicted with the plain meaning of 42 U.S.C. § 607(b)(1)(B)(iv). Once again, the district court anchored its conclusion in what it characterized as plain meaning, and ended its inquiry there. The court determined that § 607(b)(1)(B)(iv) authorized the reduction only of the income "'payable to [a] child . . . specified in [§ 607(a) ].'" Memorandum Decision at 5. Thus, only the AFDC payments going to children eligible under § 607(a) would be reduced by the unemployment compensation received by the principal earner.

Defendants point to two problems with the district court's interpretation. First, the

<hr>

12. Plaintiffs note that the legislative history of the Tax Reform Act, which amended the family filing rule to include § 607(a) children, refers to the required inclusion of dependent children. From Congress' use of the word dependent, plaintiffs conclude that Congress meant to require the inclusion of only needy § 607(a) children. The legislative history of the DEFRA amendment which created the original family

filing rule covering § 606(a) children, however, similarly refers to the compelled inclusion of dependent children. As we have explained, the compelled inclusion of § 606(a) children has been upheld by other federal courts. Plaintiffs' argument, without more, does nothing to advance a reasonable basis for treating § 607(a) children differently from § 606(a) children.

court ignored that § 607(b)(1)(B)(iv) of the statute actually compels the reduction of the AFDC payment otherwise payable to "a child *or relative* specified" in § 607(a). The word "relative" creates an ambiguity in the statute which the court failed to apprehend. Second, once this language is placed in the context of the larger statutory scheme, the district court's reading cannot be reconciled with the family filing rule. For the reasons that follow, we conclude that deference to the Secretary is proper in this instance.

We first examine the meaning of the word "relative" in § 607(b)(1)(B)(iv). That section directs attention to a child or relative specified in § 607(a). Turning to § 607(a), one sees that the reference encompasses relatives specified in § 606(a)(1)—a "father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece." 42 U.S.C. § 606(a). Defendants argue that a plausible interpretation of § 607(b)(1)(B)(iv) is that it directs the deduction of unemployment compensation from AFDC payable to any § 607(a) child, or to any listed, co-resident relative of that child. Plaintiffs offer a strong contrary argument that the relatives listed in § 606(a)(1) are intended to represent only the caretaker relatives of the dependent child. Whether for the purposes of § 607(b)(1)(B)(iv), Congress meant to provide a list of co-resident relatives or to limit its reference to caretaker relatives is, arguably, ambiguous. As we explained *supra,* when we find ambiguity we give deference to the considered interpretation of the Secretary. *See Evans,* 933 F.2d at 7.

Even were we to agree with plaintiffs' argument as to the meaning of the word "relative," we would still encounter the problem of conflict with the later-enacted family filing rule when we place § 607(B)(1)(B)(iv) into the context of the statutory scheme. As we have held, the family filing rule applies to § 607(a) children. The rule establishes a uniform system whereby need is calculated on the basis of the collective needs of the household. Adopting the plaintiffs' reading of § 607(b)(1)(B)(iv) would lead to the anomalous practice of assessing need collective-

ly, and then splintering the family unit at the point of determining the proper AFDC payment. To assess need based on one picture, and arrive at benefits based on another, is unworkable and undercuts the policy behind the family filing rule. *See Bowen, supra* Part I Section C (citing S. Print No. 98–169 at 980) (noting that one purpose of the rule is to "ensure that the income of family members that live together and share expenses is recognized and counted available to the family as a whole").

■ Where different provisions of the same statutory scheme are in tension, a court should make every effort to construe such provisions so as to achieve consistency and harmony. *See Atwell v. Merit Systems Protection Bd.,* 670 F.2d 272, 286 (D.C.Cir.1981) (provisions should, wherever possible, be construed to achieve consistency); *Citizens to Save Spenser County v. EPA,* 600 F.2d 844, 871 (D.C.Cir.1979) (duty to achieve harmonization of conflicting provisions). To the extent that the issue is one that has the potential for undermining the policy behind the family filing rule, we believe that the Secretary is in the best position to resolve the conflict. *See Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782 (1984) (citing *United States v. Shimer,* 367 U.S. 374, 382, 383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961), for the proposition that the principle of deference to administrative interpretations is followed whenever a decision as to the meaning of a statute involves reconciling conflicting policies). Our conclusion is buttressed by the fact that the Secretary was involved in proposing and drafting the family filing rule. *See Gorrie,* 809 F.2d at 514 (noting the Secretary's involvement in proposing the legislation for the purpose of establishing rules about who must file together for AFDC); *Bowen,* 483 U.S. at 592, 593 n. 5, 107 S.Ct. at 3012, 3013 n. 5 (same); *St. Luke's Hosp.,* 810 F.2d at 331 (counseling deference where the Secretary was present at the statute's creation and thus is likely to be in a better position to know the intent of the enacting Congress).

Finally, we observe, as did the district court, that it is not at all clear that Congress has addressed the precise issue presented; namely, the application of these distinct stat-

utory provisions to the particular situation of families composed of both § 606(a) and § 607(a) children. In *Chevron,* the Supreme Court explained that in construing a statute courts should first seek to ascertain "whether Congress has directly spoken to the precise question at issue." *Chevron,* 467 U.S. at 842, 104 S.Ct. at 2781. Although we do not take the command to mean that Congress must anticipate all of the possible scenarios that might arise under a statute, we believe that this is a case in which deference to the interpretation of the Secretary is especially warranted. As we explained in *St. Luke's Hosp.,* 810 F.2d at 331, "[a]n implied delegation of a law-declaring function is especially likely where, as here, the question is interstitial, involves the everyday administration of the statute, implicates no special judicial expertise, and is unlikely to affect broad areas of the law." Cf. *Drysdale v. Spirito,* 689 F.2d 252, 261 (1st Cir.1982) (counseling deference where the issue is interstitial, and "imbued with administrative history and complexity").

The factors of ambiguity in a statute, conflicting statutory provisions, and a complex, interstitial question arising in the daily administration of the statute—all counsel deference to the Secretary. We must only assess whether the Secretary's interpretation is permissible. We find that the Secretary's policy harmonizes the two statutory provisions, while doing violence to neither individually. The Secretary sensibly applies the family filing rule. In reading § 607(b)(1)(B)(iv) to require the deduction of unemployment compensation from the AFDC payment, the Secretary reasonably effectuates the will of Congress to treat AFDC as a supplement to unemployment compensation, rather than treating the two as alternative forms of assistance.

At oral argument, both parties highlighted inequities resulting from the respective interpretations of the district court and the Secretary. Under the district court's reading, families which contain both § 607(a) children and § 606(a) children receive a greater AFDC benefit than that received by families who are composed entirely of § 606(a) children or entirely of § 607(a) children. Defendants pointed out that, by carving out two units, the district court effectively permits one unit to receive the maximum payment of AFDC, while the other one receives the maximum payment of unemployment compensation. Plaintiffs emphasized that under the Secretary's reading, families composed of both § 606(a) and § 607(a) children receive less AFDC than families composed only of § 606(a) children. Once AFDC is characterized in the light of its statutory purpose as a supplement to unemployment income, however, it is apparent that the total income going to families with both categories of children is no less than that going to a § 606(a) family composed of the same number of persons.

We recognize the hardship visited on families in the plaintiff class, whose life circumstances changed dramatically following the unemployment of the principal earner. The income going to the family unit was reduced by the onset of unemployment, and then was further diminished by reduction of the AFDC payment in the amount of unemployment compensation received. The impact on the families in the plaintiff class of the HHS/DHS policies is exacerbated by the way in which Maine treats the gap between the standard of need and the maximum AFDC payment. *See* discussion *supra* Part I, Section A. Maine's policy permitted many families prior to the unemployment of the principal earner to attain the maximum AFDC payment because the amount of countable income earned by the principal earner fell within the gap. *See id.* Maine's treatment of the gap, however, generally permits more families to live at a higher level of subsistence, and has not been challenged by the plaintiff class.

In the end, we must acknowledge that the Congress, HHS and DHS are charged with the difficult task of allocating limited funds across a range of needy families. Overall, we believe that the practical implications of the Secretary's reading of the statute, when viewed allocationally, are more equitable than those flowing from the construction given by the district court. The decision of the district court is ***Reversed. No costs.***