Tracy A. BUENING, Petitioner-Respondent,

v.

WISCONSIN DEPARTMENT OF HEALTH & SOCIAL SERVICES,
Respondent-Appellant.

Court of Appeals

*No. 94–0891. Submitted on briefs January 13, 1995.—Decided
September 30, 1996.*

(Also reported in 556 N.W.2d 116.)

33

35

For the respondent-appellant the cause was submitted on the brief of *James E. Doyle,* attorney general, with *Donald P. Johns*, assistant attorney general.

For the petitioner-respondent the cause was submitted on the brief of *Jack Longert* of *Legal Action of Wisconsin, Inc.* of Madison.

Before Eich, C.J., Paul C. Gartzke and Robert D. Sundby, Reserve Judges.

SUNDBY, RESERVE JUDGE. This appeal presents the question: Does a child meeting all other eligibility requirements qualify for Aid for Families with Dependent Children (AFDC) when her parent becomes unemployed but is paid unemployment compensation exceeding the state's level of assistance?[1] We

---

[1] The Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105

36

reject the argument of the Wisconsin Department of Health and Social Services ("department") that a child is per se "dependent" as defined in 42 U.S.C. § 607(a) when the principal-earner parent becomes unemployed. We further conclude that because unemployment compensation is not a social welfare benefit, but under Wisconsin law is temporary substitute income, it must be considered in determining eligibility for AFDC benefits. Because it is undisputed that the principal-earner parent's unemployment compensation was sufficient under the state's standards to support himself and his child, the child was not a "dependent child," as defined in 42 U.S.C. § 607(a), and was not eligible for AFDC benefits. Therefore, the state agency administering the state's AFDC plan, the Dane County Department of Human Services (DCHS), incorrectly added the child and her father to petitioner Tracy Buening's assistance unit. We affirm the trial court's order reversing the department's decision affirming DCHS's action.

## I. Background

Prior to March 1, 1993, Tracy Buening and her daughter, Azeria, constituted an assistance unit[2] and received $440 per month in AFDC benefits. Buening's partner, Bradley Smith, and their two-year-old child, Caitlin, live with Buening and her daughter. Smith has lived with Buening since 1987. Smith is not Azeria's

(Aug. 1996), terminated entitlement to AFDC benefits under any state plan approved under part A of title IV of the Social Security Act, effective October 1, 1996.

[2] An "[a]ssistance [u]nit is the group of individuals whose income, resources and needs are considered as a unit for the purposes of determining eligibility [for AFDC benefits] and the amount of payment." 45 C.F.R. § 206.10(b)(5).

natural or adoptive father. Nor is he her stepfather because he and Buening have not married. Azeria is eligible for AFDC benefits because she is a "dependent child," as defined in 42 U.S.C. § 606(a),[3] by reason of the continued absence of her natural father from her home. Until December 19, 1992, Smith was fully employed and earned approximately $1,500 per month. He was laid off and in January 1993 began to draw monthly unemployment compensation of approximately $652. DCHS determined that upon Smith's unemployment, Caitlin became a "dependent child" "who has been deprived of parental support or care by reason of the unemployment . . . of the parent who is the principal earner." DCHS added both Smith and Caitlin to Buening's "filing unit" and concluded that 42 U.S.C. § 607(b)(1)(B)(iv)[4] required that it deduct

---

[3] 42 U.S.C. § 606(a) provides:

The term "dependent child" means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home (other than absence occasioned solely by reason of the performance of active duty in the uniformed services of the United States), or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) at the option of the State, under the age of nineteen and a full-time student in a secondary school (or in the equivalent level of vocational or technical training), if, before he attains age nineteen, he may reasonably be expected to complete the program of such secondary school (or such training).

[4] 42 U.S.C. § 607(b)(1)(B)(iv) provides:

(1) In providing for the provision of aid to families with dependent children under the State's plan . . . in the case of families that include dependent children within the meaning of subsection (a) of this section, . . . the State's plan—

Smith's monthly unemployment compensation from the budgetary requirement of $617 per month for four persons. Section 49.19(11)(a), STATS. Because Smith's unemployment compensation exceeded this assistance standard, DCHS terminated Buening's and Azeria's AFDC grant, effective March 1, 1993. The department affirmed.

## II. Decision

■

Prior to Smith's unemployment, the combined monthly income of the Buening/Smith "family" was $1,940. Upon his unemployment, Smith's monthly income dropped from $1,500 to approximately $652. DCHS could not consider Smith's income while employed because he was merely the "man-in-the-house" who had no obligation to support Buening and Azeria. 45 C.F.R. § 233.90(a)(1) provides that the determination of whether a child has been deprived of parental support may be made only in relation to a parent who has an obligation to support the child. "Under this requirement, the inclusion in the family, or the presence in the home, of a 'substitute parent' or 'man-in-the-house' . . . is not an acceptable basis for a

----

. . . .

(B)   shall provide—

. . . .

(iv)   for the reduction of the aid to families with dependent children otherwise payable to *any child or relative specified in subsection (a)* by the amount of any unemployment compensation that such child's parent described in subparagraph (A)(i) receives under an unemployment compensation law of a State or of the United States.

(Emphasis added.)

finding of ineligibility *or for assuming the availability of income by the State . . . .*" *Id.* (emphasis added).

The existence of a joint legal duty of support on behalf of both the beneficiary and representative payee is crucial when determining the availability of income for AFDC purposes. The Supreme Court noted in *Heckler v. Turner*, 470 U.S. 184, 200, 105 S. Ct. 1138, 1147, 84 L.Ed.2d 138, 150 (1985), that the availability principle serves to prevent states from "imputing financial support from persons who have no obligation to furnish it." This language suggests that the practice of "deeming" or imputing income to be available to an AFDC recipient is improper only when there is no legal obligation of support existing between the AFDC recipient and the person whose income is "deemed" available to the recipient.

*Fransen v. Iowa Dep't of Human Servs.*, 376 N.W.2d 903, 907-08 (Iowa 1985) (footnote omitted).

45 C.F.R. § 233.20(a)(3)(ii)(D) provides that in determining eligibility for AFDC benefits, a state plan must provide that:

"Income . . . and resources available for current use shall be considered. To the extent not inconsistent with any other provision of this chapter, income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance."

*See Deel v. Jackson*, 862 F.2d 1079, 1082 (4th Cir. 1988) (quoted source omitted), *cert. denied*, 490 U.S. 1092 (1989).

Courts have construed this language to mean that AFDC eligibility determinations may be based only on

40

income and resources actually available to the applicant for assistance. *Heckler v. Turner*, 470 U.S. 184, 199 (1985). The United States Supreme Court's decisions applying the availability principle "clearly reflect that its purpose is to prevent the States from relying on imputed or unrealizable sources of income artificially to depreciate a recipient's need." *Id.* at 201. For example, in *King v. Smith*, 392 U.S. 309, 319-320 & n.16 (1968), the Court held that Alabama could not deny assistance to otherwise eligible children solely because their mother cohabited with a "substitute father" without regard to whether the "father" actually contributed to the children's support.

"Applications of the availability principle have . . . been consistent with the purpose that the rule seeks to achieve—precluding the fictional imputation of income to AFDC applicants from relatives and *housemates* who never actually contribute to the AFDC assistance unit." *Deel*, 862 F.2d at 1084 (emphasis added).

In *Sundberg v. Mansour*, 627 F. Supp. 616, 621 (W.D. Mich. 1986), *aff'd*, 847 F.2d 1210 (6th Cir. 1988), the Secretary argued that the DEFRA amendments (Deficit Reduction Act of 1984),[5] which added 42 U.S.C. § 602(a)(38) to the Social Security Act, did not "deem" sibling income and resources available to Medicaid applicants or recipients, but merely required that certain siblings be added to the public assistance filing unit. The court held that the Secretary argued "a distinction without a difference" because by requiring that siblings be included in the filing unit, the Secretary in effect "deemed" their income available to the Medicaid applicant or recipient. *Id.*

---

[5] Pub. L. No. 98-369, § 2640(a), 98 Stat. 494, 1145 (1984) (codified in part at 42 U.S.C. § 602(a)(38)).

We agree that § 602(a)(38) is a "deeming" require-
ment; however, income of a sibling is not available to
the assistance unit unless that sibling is a "dependent
child." Further, the sibling's income must be actually
available. Caitlin has no income which may be
"deemed" available to support Buening and Azeria.
While Caitlin's father has a legally enforceable obliga-
tion to support her, there is no court order requiring
him to pay a certain amount periodically to her, as is
the case when a child receives child support from an
absent parent. The Secretary's regulations bar any
state presumption that income of a nonlegally respon-
sible person in a household is available to support all
dependent children who reside therein. *See Bray v.
Dowling*, 25 F.3d 135, 144 (2d Cir. 1994), *cert. denied*,
115 S. Ct. 1431 (1995).

In *Lewis v. Martin*, 397 U.S. 552 (1970), the Court
said:

> In the absence of proof of actual contribution, [the
> States] may not consider the child's "resources" to
> include either the income of a nonadopting stepfa-
> ther who is not legally obligated to support the child
> as is a natural parent, or the income of a MARS
> [man assuming the role of a spouse]—whatever the
> nature of his obligation to support.

*Id.* at 559-60, *quoted in Malloy v. Eichler*, 628 F. Supp.
582, 595 (D. Del. 1986), *aff'd*, 860 F.2d 1179 (3d Cir.
1988). In *Malloy*, the court interpreted the DEFRA
amendments as not requiring the states to attribute
income of siblings or grandparents, who live in the
same assistance unit, to Medicaid applicants. DEFRA
may require the income of dependent siblings to be
attributed to the AFDC assistance unit, but the lan-

guage of the amendments does not permit us to assume that Congress intended to eliminate or modify the availability principle. Congress must be presumed to have been aware of the Secretary's interpretive regulations and policies that did not permit the states to attribute income not actually available to the assistance unit.

If DCHS had determined after a hearing that Smith actually supported Buening and Azeria, we would have a different case, but it elected to create a per se rule that Caitlin became a dependent child merely because her father became unemployed.

If Smith had remained employed but his monthly wages were reduced to $652, the Buening family would have remained eligible for AFDC benefits. Thus, when they needed it most, the state took away a substantial part of their income on the fiction that Caitlin became a "deprived" child when her father became unemployed.

The department acknowledges that this anomalous result may result in suffering or hardship for a family unit. If this result was intended by Congress, that intent must clearly appear. It does not appear in Congress's statement of the purpose of the Aid to Dependent Children legislation, which in 1961 temporarily extended AFDC to needy children who were dependent as the result of a parent's unemployment. Pub. L. No. 87-31, § 1, 75 Stat. 75 (1961); *see Philbrook v. Glodgett*, 421 U.S. 707, 710 & n.3 (1975). The department explains why the AFDC-UF (Unemployed Father), now AFDC-UP (Unemployed Parent) Program was enacted:

> By providing assistance to families with both parents present, where one was unemployed, Congress hoped to counteract the incentive for desertion and, in particular, the incentive for the

real or pretended desertion of fathers inherent in a program where assistance was available in the event of the absence from the home of a parent. The goal of family stability evident from the legislative history of § 607 was consistent with . . . one of the stated objectives of the entire program set forth in § 601 "to help maintain and strengthen family life."

42 U.S.C. § 601 provides:

For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part. . . .

In 1968 Congress made the AFDC-UP program permanent; for a general discussion of the history of this program, see *Westcott v. Califano*, 460 F. Supp. 737, 749-50 (D. Mass. 1978), *aff'd*, 443 U.S. 76 (1979), and *Philbrook*, 421 U.S. at 710 & n.5.

The department's administration of the AFDC-UP program, if extended to nontraditional "families" to include the income and resources of persons who have no legal responsibility to support the members of the AFDC filing unit, fosters the incentive for desertion and is contrary to the goal of family stability, which the

department acknowledges was the purpose of the AFDC-UP program. Smith and Caitlin can restore Buening's and Azeria's eligibility for AFDC benefits by simply moving from the household. Although Smith would have an enforceable duty to support Caitlin, he would not have a legal obligation to support Buening and her child. Thus, Buening and Azeria would again be eligible for AFDC benefits.

The department contends that despite the anomaly of denying a needy child assistance when the "man-in-the-house" becomes unemployed, that result is required by the DEFRA amendments and the Secretary of the Department of Health and Human Services (DHHS)'s interpretative regulation, 45 C.F.R. § 206.10(a)(1)(vii).

42 U.S.C. § 602(a)(38) provides in part:

> [I]n making the determination under paragraph (7) with respect to a dependent child and applying paragraph (8), the State agency shall (except as otherwise provided in this part) include—
>
> (A)   any parent of such child, and
>
> (B)   any brother or sister of such child *if such brother or sister meets the conditions described in* clauses (1) and (2) of section . . . 606(a) . . . or in *section . . . 607(a) . . .* [and] is living in the same home as the dependent child, and any income of or available for such parent, brother, or sister shall be included in making such determination . . . .

(Emphasis added.)

The "determination" under subsection (7) is the determination whether a needy family with children is eligible for AFDC. 42 U.S.C. § 602(7)(B).

45 C.F.R. § 206.10(a)(1)(vii) provides:

(a)   State plan requirements. A State plan under title . . . IV-A [Aid To Families With Dependent Children] . . . shall provide that:

(1)   . . . .

(vii)   For AFDC only, in order for the family to be eligible, an application with respect to a dependent child must also include, if living in the same household *and otherwise eligible for assistance*:

> (A)   Any natural or adoptive parent, or stepparent (in the case of States with laws of general applicability); and
>
> (B)   Any blood-related or adoptive brother or sister; . . . .

(Emphasis added.)

The department does not argue that subparagraph (A) required it to include Smith in Buening's assistance unit. Smith is not Azeria's natural or adoptive parent or her stepparent because he and Tracy have not married.

The department contends, however, that the state's plan was required to include Caitlin, and through her, Smith, because Caitlin is Azeria's blood-related sister. It argues that Caitlin became "otherwise eligible for assistance" when her father became unemployed, "regardless of any . . . need determination." It asserts: "By definition, Caitlin is a deprived child because of her father's unemployment . . . ."

In determining Congress's intent in adding the DEFRA amendments to the Social Security Act, we look first, as always, to the language of the statute. *Heckler v. Turner*, 470 U.S. 184, 193 (1985). Under the

46

plain language of 42 U.S.C. § 607(a), Caitlin is not "deprived":

> The term "dependent child" shall, notwithstanding section . . . 606(a), of this title include a needy child who meets the requirements of section . . . 606(a)(2) of this title, *who has been deprived of parental support or care by reason of the unemployment* . . . of the parent who is the principal earner . . . .

(Emphasis added.)

Section 606(a)(2) prescribes age requirements, which are satisfied in this case.

The department redrafts § 607(a) to read: "The term 'dependent child' shall include a child whose principal-earner parent becomes unemployed." It is a familiar rule of statutory construction that we give meaning to every word of a statute. *Jauquet Lumber Co. v. Kolbe & Kolbe Millwork Co.*, 164 Wis. 2d 689, 700, 476 N.W.2d 305, 308 (Ct. App. 1991). In the absence of ambiguity, we give words in a statute their common meaning and may resort to any standard dictionary to find that meaning. *Girouard v. Jackson Circuit Court*, 155 Wis. 2d 148, 156, 454 N.W.2d 792, 796 (1990). According to WEBSTER'S NEW COLLEGIATE DICTIONARY 305, 768 (1977), "needy" means "being in want"; "deprived" means "marked by deprivation esp. of the necessities of life . . . ." DCHS did not determine whether Caitlin was in fact "needy" or "deprived."

The AFDC program was enacted in 1935 to combat the effects of the Great Depression by " 'provid[ing] financial assistance to needy dependent children and the parents or relatives who live with and care for them.' " *Bowen v. Gilliard*, 483 U.S. 587, 589 n.1 (1987) (quoting *Shea v. Vialpando*, 416 U.S. 251, 253 (1974)).

47

That remains the purpose of the AFDC program. The department's construction of §§ 602(a)(38) and 607(a), which writes out of the AFDC-UP program a determination of need, is contrary to what has been the purpose of the Social Security Act for over sixty years.

The department's examiner concluded: "I determine that Caitlin is a deprived child who must be added to the petitioner's assistance unit, *regardless of a need determination*." (Emphasis added.) The department has not considered the implications of its decision. Henceforth, every child whose principal-earner parent becomes unemployed would be "needy" and eligible for AFDC benefits. If Smith and Caitlin choose to establish their own household and Smith remains unemployed, Caitlin becomes "deprived" and she and Smith are eligible for AFDC benefits, regardless of whether she is "needy." Caitlin is not, in fact, "needy" because her father has ample unemployment compensation to provide for her. Also, he could have income from other sources to devote to her care and support.

We conclude that a child does not automatically become "dependent," "needy" or "deprived" when his or her principal-earner parent becomes unemployed. The plain language of § 607(a) requires that the "dependent child" must have been "deprived of parental support or care *by reason of* the unemployment . . . of the parent who is the principal earner . . . ." (Emphasis added.) "By reason of" means "caused by." There will be many instances in which a child will be deprived because of a parent's unemployment: the parent may be ineligible for unemployment compensation or the compensation may be insufficient to support the child and parent. Neither case is presented here; Caitlin's father is paid

monthly unemployment compensation of approximately $652. This is well above the family assistance level prescribed by § 49.19(11)(a)1.a, STATS.

Some courts have held that § 602(a)(38) requires that all siblings of a dependent child be included in the child's filing unit regardless of need. Many of these courts have not found § 602(a)(38) ambiguous but have implemented what they believe to be Congress's intent in adding this provision to the Social Security Act. Other courts have found § 602(a)(38) ambiguous and relied on the legislative history of the DEFRA amendments and the general purpose of the Act to require that persons receiving benefits under other social welfare programs be included in the family filing requirement. "Since both AFDC and OASDI [Old Age and Survivors' Disability Insurance] are social welfare programs, the consideration of OASDI benefits in determining need under the AFDC program also facilitates the allocation of scarce public funds to those most in need." *Oliver v. Ledbetter*, 624 F. Supp. 325, 332 (N.D. Ga. 1985), *aff'd*, 821 F.2d 1507 (11th Cir. 1987); *see also Skidgel v. Maine Dep't of Human Servs.*, 994 F.2d 930, 941 (1st Cir. 1993) (Congress and federal and state agencies are "charged with the difficult task of allocating limited funds across a range of needy families"); *Huber v. Blinzinger*, 626 F. Supp. 30, 33 (N.D. Ind. 1985) (same); *Tigner v. Secretary, Cabinet For Human Resources*, 858 S.W.2d 208, 211 (Ky. Ct. App. 1993) (social security disability benefits).

The Congress and the legislature do not allocate "scarce public funds," at least in this state, when unemployment compensation is paid to a temporarily unemployed person. Wisconsin's unemployment compensation program is not a social welfare program.

49

Unemployment compensation is replacement income. Section 108.01(1), STATS., declares that it is the public policy of this state that each employing unit "can reasonably be required to build up a limited reserve for unemployment, out of which benefits shall be paid to its eligible unemployed workers, as a *matter of right, based on their respective wages and lengths of service.*" (Emphasis added.) Smith earned his unemployment compensation as surely as he earned his wages while he was employed. The same rule requiring exclusion of his wages, which is used in determining Buening's and Azeria's AFDC eligibility, must be applied to his replacement income.

The department's error in interpreting Congress's intent in adding the DEFRA amendments to the Social Security Act lies in failing to understand that Congress intended to plug the loop-hole where a parent could exclude the income of a child or relative which was available to support the members of the filing unit. Smith's income, including his unemployment compensation replacement income, is not available to support Buening and Azeria.

We have not forgotten that 42 U.S.C. § 607(b)(1)(B)(iv) requires that a state plan provide:

> for the reduction of the aid to families with dependent children otherwise payable to any child or relative specified in subsection (a) by the amount of any unemployment compensation that *such child's* parent described in subparagraph (A)(i) receives under an unemployment compensation law of a State or of the United States.

(Emphasis added.)

"[S]uch child[]" is Azeria, not Caitlin. "[S]uch child's parent" is Buening, not Smith. If Buening

50

received unemployment compensation, § 607(b)(1)(B)(iv) would require the state agency to reduce her AFDC by the amount of that compensation. If Caitlin and Smith qualified for AFDC benefits, the state agency would be required to reduce their assistance by Smith's unemployment compensation.

The need determination is a two-step process. 57 Fed. Reg. 30132, 30139 (1992) (Secretary's interpretive comments). "First, the composition of the assistance unit must be determined. Second, income is considered in relation to the determination of need." *Id.* DCHS should not have reached the second step of the process because Caitlin and her father were not eligible for AFDC benefits and could not form an assistance unit or be added to the Buening family's assistance unit. DCHS and the department have mistakenly read the DEFRA amendments to repeal the "man-in-the-house" "deeming" prohibition.

It is necessary to extend this discussion to dispel the notion that Congress intended that the DEFRA amendments—the "family filing rule"—require participating states to include in the family filing unit nondependent persons and persons not eligible for AFDC benefits who have no legal obligation to support the members of the "family" who do apply for assistance. We must also dispel the notion that the Secretary has so construed the DEFRA amendments.

The report of the Senate Finance Committee which accompanied the Deficit Reduction Act of 1984 stated:

## Present Law

There is no requirement in present law that parents and all siblings be included in the AFDC filing unit. Families applying for assistance may

exclude from the filing unit certain family members who have income which might reduce the family benefit. For example, a family might choose to exclude a child who is receiving social security or child support payments, if the payments would reduce the family's benefits by an amount greater than the amount payable on behalf of the child. . . .

## Explanation of Provision

The provision approved by the Committee would require States to include in the filing unit the parents and all *dependent* minor siblings (except SSI recipients and any stepbrothers and stepsisters) living with a child who applies for or receives AFDC. . . .

This change will end the present practice whereby families exclude members with income in order to maximize family benefits, and will ensure that the income of the family members who live together and share expenses is recognized and counted as available to the family as a whole.

Sen. Print No. 98-169 at 980 (1984) (emphasis added).

We see nothing in the Committee report suggesting that Congress intended to create a "household" filing rule where all persons residing together must be included in an assistance unit. Congress could easily have made such a requirement explicit. We cannot assume that the Committee misspoke when it said: "The provision approved by the Committee would require States to include in the filing unit the parents and all *dependent* minor siblings (except SSI recipients and any stepbrothers and stepsisters) living with a child who applies for or receives AFDC. . . ." *Id.* (emphasis added). Courts which have made § 602(a)(38) a household filing rule have ignored the Committee's qualification that the rule only includes "*dependent*"

minor siblings. They have also read out of § 607(a), the plain language that defines a "dependent child" as a "needy" child "who has been deprived of parental support or care by reason of the unemployment . . . of the parent who is the principal earner . . . ."

We agree with the court in *Skidgel*, 994 F.2d at 940-41, that "it is not at all clear that Congress has addressed the precise issue presented; namely, the application of these distinct statutory provisions to the particular situation of families composed of both § 606(a) and § 607(a) children." It is clear, however, that in adding the family filing rule to the Social Security Act, Congress did not address the issue of the nontraditional family where the "man-in-the-house" receives unemployment compensation which is not available to support the members of an existing assistance unit.

We also agree with the *Skidgel* court that § 602(a)(38) "is anything but elegantly drafted" and that "statutory construction [of the Act] is made difficult by the patchwork manner in which the AFDC statute has been enacted." *Id.* at 939. The court reluctantly[6] concluded that it would defer to the Secretary's construction that § 602(a)(38) and § 607(b)(1)(B)(iv)

---

[6] The court "recognize[d] the hardship visited on families in the plaintiff class, whose life circumstances changed dramatically following the unemployment of the principal earner. The income going to the family unit was reduced by the onset of unemployment, and then was further diminished by reduction of the AFDC payment in the amount of unemployment received." *Skidgel v. Maine Dep't of Human Servs.*, 994 F.2d 930, 941 (1st Cir. 1993). The court concluded that "[i]n the end, we must acknowledge that the Congress, HHS and DHS are charged with the difficult task of allocating limited funds across a range of needy families." *Id.*

required the state agency to deduct from AFDC payments unemployment compensation received by a stepparent in a two-parent household including at least one child-in-common and one stepchild of the unemployed principal earner. *Id.* at 932.

*Skidgel* considered only a traditional family including a stepchild and a stepfather having an enforceable obligation to support his stepchild. Smith is not Azeria's stepfather and is not a "parent," as defined in § 602(a)(38). *Skidgel* is therefore of little help in considering how § 602(a)(38) affects the Buening/Smith family.

The department argues that the Secretary's interpretation of the DEFRA amendments is " 'a permissible one,' " quoting *Orris v. Sullivan*, 974 F.2d 109, 113 (9th Cir. 1992) (quoting *Sullivan v. Everhart*, 494 U.S. 83, 93 (1990)). But the department does not refer us to an interpretation by the Secretary that a child whose principal-earner parent becomes unemployed is per se "needy" and "deprived." As to blood-related siblings, the Secretary construes § 602(a)(38) to require that the assistance unit include "blood-related . . . brothers and sisters (including half brothers and sisters) who are living in the same household as the dependent child [Azeria] *and who meet the eligibility requirements for AFDC* . . . ." 57 Fed. Reg. 30132, 30136 (1992) (Secretary's interpretive comments) (emphasis added). The Secretary also states the DEFRA amendments require that an application on behalf of a dependent child must include brothers and sisters of the dependent child, including half-brothers and sisters, "who are themselves dependent children . . . ." *Id.* at 30135.

These interpretive comments do not, of course, answer the question who is a "needy" and thus a

"dependent" child. That question is answered by the Secretary's regulation 45 C.F.R. § 233.90(c)(1)(i) which provides:

> The phrase "needy child . . . deprived . . . by reason of" requires that both need and deprivation of parental support or care exist in the individual case. The phrase encompasses the situation of any child who is in need and otherwise eligible, and whose parent—father or mother—either has died, has a physical or mental incapacity, or is continually absent from the home. This interpretation is equally applicable whether the parent was the chief bread winner or devoted himself or herself primarily to the care of the child, and whether or not the parents were married to each other. The determination whether a child has been deprived of parental support or care is made in relation to the child's natural parent or, as appropriate, the adoptive parent or stepparent or stepparent described in paragraph (a) of this section.

This regulation was adopted before the Tax Reform Act of 1986 amended § 607(a) to include as a "dependent child" a "needy child . . . deprived . . . by reason of" the principal-earner parent's unemployment. However, the Secretary has always interpreted § 602(a)(38) to apply to a child eligible under either the AFDC or the AFDC-UP program. *See* 57 Fed. Reg. 30132, 30138 (Secretary's interpretive comments). Further, it would an unreasonable construction of the statutes to conclude that "needy child . . . deprived . . . by reason of" means something different in § 607(a) from what it means in § 606(a).

We would needlessly extend this opinion if we discussed the numerous cases we have considered

construing the DEFRA amendments.[7] In the main,

[7]*Bowen v. Gilliard*, 483 U.S. 587, 608-09 (1987) (requirement that family wishing to receive AFDC benefits include child receiving child support not unconstitutional); *Heckler v. Turner*, 470 U.S. 184, 211 (1985) (in calculating household's need, state must treat mandatory tax withholdings as work expenses); *Bray v. Dowling*, 25 F.3d 135, 143 (2d Cir. 1994) (state could require all children living with caretaker, including those for whom she was not legally responsible, to be included in assistance unit), *cert. denied*, 115 S. Ct. 1431 (1995); *Minnesota v. Heckler*, 718 F.2d 852, 860 (8th Cir. 1983) (language of Congress is conclusive in the absence of clearly expressed legislative intent to the contrary); *Maryland Dep't of Human Resources v. United States*, 648 F. Supp. 1017, 1024 (D. Md. 1986) (child support payment received by children of AFDC recipient must be counted in determining eligibility); *Gibson v. Sallee*, 648 F. Supp. 54, 60 (M.D. Tenn. 1986) (AFDC applicants granted preliminary injunction to restrain agency from including income of non-needy children in determining AFDC eligibility); *Sherrod v. Hegstrom*, 629 F. Supp. 150, 153 (D. Or. 1985) (42 U.S.C. § 602 (a)(38) requires family applying for AFDC benefits to include income available to all siblings and half-siblings), *aff'd*, 828 F.2d 23 (9th Cir. 1987); *Shonkwiler v. Heckler*, 628 F. Supp. 1013, 1017 (S.D. Ind. 1985) (42 U.S.C. § 602(a)(38) requires that child support, Medicaid benefits, military allotment, and social security benefits payable to AFDC recipient's child be included in determining AFDC eligibility); *Huber v. Blinzinger*, 626 F. Supp. 30, 33 (N.D. Ind. 1985) (OASDI benefits received by representative of child to be counted as income to parent applying for AFDC); *Oliver v. Ledbetter*, 624 F. Supp. 325, 332 (N.D. Ga. 1985), (DEFRA amendment requires consideration of OASDI survivors' benefit in determining AFDC eligibility), *aff'd* 821 F.2d 1507 (11th Cir. 1987); *Gorrie v. Heckler*, 606 F. Supp. 368, 372 (D. Minn. 1985) (Secretary's rule requiring application for AFDC to include unavailable income of nondependent siblings void); *La Beaux v. Department of Human Servs.*, 465 N.W.2d 541, 544 (Iowa 1991) (availability principle prevents denial of

most of these decisions involve traditional families where a child to whom both parents owe a duty of support receives income directly available to the child from sources such as child support or Social Security benefits. None of the decisions we reviewed have discussed the Secretary's Interpretive Comments of July 8, 1992. Nor have they considered how the amendments impact a nontraditional family in which the "man-in-the-house" has no duty to support the members of the assistance unit. We conclude, however, that the Iowa Supreme Court reached the correct result in a case very similar to the case before us, *Phipps v. Iowa Department of Human Services*, 409 N.W.2d 174 (Iowa 1987).

The AFDC recipient, Betty Phipps, had four minor children, three of whom were born during a marriage long since terminated. *Id.* at 175. Her fourth child, Gregg, was the son of Roscoe Phipps, with whom she and her other children lived. Although Betty took Roscoe's name, they did not marry. Roscoe worked and supported Gregg but did not support Betty or her other children. Following an injury, in September 1985, Roscoe began receiving worker's compensation benefits. The state agency terminated Betty's AFDC benefits because the household income, including Roscoe's worker's compensation benefits, exceeded the family standard of need under the state's program. The Iowa court concluded that "[n]owhere is it suggested . . . in the statutes or regulations involved that a non-depen-

---

AFDC benefits on the basis of income never really available for applicant's use); *Lopez v. Ohio Dep't of Human Servs.*, 623 N.E.2d 689, 691 (Ohio Ct. App. 1993) (fact that father of half-sibling is unemployed sufficient to conclude that she is dependent child).

dent child had to be included in the calculation" of available income. *Id.* at 178. The court said:

> To be sure, Congress expressed a clear intent [in DEFRA] to "deem" income received by one member of an AFDC household available to all members of the household. Nevertheless the DEFRA amendments strictly limited their application to include only siblings who qualify as "dependent children" otherwise eligible for assistance. Only if the minor siblings of an AFDC applicant meet the conditions of "dependency" set forth in 42 U.S.C. section 606(a)(1) and (2) did Congress intend for them to be included in the applicant's filing unit.
>
> Gregg [their son] is not a "dependent child" because he has not been deprived of the care or support of his father. . . .
>
> . . . To "deem" Roscoe Phipps' income available, through Gregg, to the entire household would violate the express terms and provisions of 42 U.S.C. section 602(a)(38) and 45 C.F.R. section 206.10(a)(1)(vii)(B).

*Id.* at 178.

We agree with this reasoning.

The department concluded below that limiting the DEFRA amendments to "dependent" children "would render the enactment of 42 USC § 607(a)(38) meaningless—nothing would have been accomplished by its passage." We may not disregard the clear and unambiguous language of a statute even if we conclude that the language may not accomplish the legislature's purpose. *National Amusement Co. v. Wisconsin Dep't of Taxation*, 41 Wis. 2d 261, 266, 163 N.W.2d 625, 628 (1969). It would be very dangerous for a court to assume that the legislative body did not mean what it

clearly said. Both in the text of § 602(a)(38) and the explanation of the provision, Congress has unambiguously said that the DEFRA amendments require states to include in the filing unit all "dependent" minor siblings living with a child who applies for or receives AFDC. Perhaps the language of § 602(a)(38) can be construed to require the state plan to include in the filing unit a child receiving Social Security or child support payments where that child would otherwise be dependent without such direct assistance. However, we do not see how the amendments can be stretched to include unemployment compensation benefits which are not paid to the child of the unemployed parent and are not directly available to such child.

Whatever may be the result in other cases where the facts are different, we conclude that in this case where the principal earner had no duty to support the members of the existing assistance unit and the state agency did not determine that his unemployment compensation was available to the members of the assistance unit, the DEFRA amendments do not require that the child of the unemployed principal earner and the principal earner to be included in the existing assistance unit.

*By the Court.*—Judgment affirmed.